KEVIN R. BAKER, ET ALS, PLAINTIFFS, v. ADELAIDE DEANE, ET AL., DEFENDANTS.

and

MICHAEL J. MATTHEWS, PLAINTIFF; v. ADELAIDE ' DEANE, DEFENDANT.

JAMES W. MASLAND III, ET AL., ETC. PLAINTIFF-INTERVENORS, v. MICHAEL J. MATTHEWS, ETC., PLAINTIFF, v. ADELAIDE DEANE, ETC., DEFENDANT.

Superior Court of New Jersey
Law Division Atlantic County

Decided September 21, 1983.

*Seth Grossman* for plaintiff Kevin R. Baker, *et als* (*Seth Grossman & Sonia G. Wagner,* attorneys).

*William Cappuccio* for defendant Adelaide Deane.

*William C. Todd III* for plaintiff Michael J. Matthews (*Tort, Jacobs, Gross & Todd,* attorneys).

*Robert Paschon* for plaintiff-intervenors James W. Masland III, *et als* (*Paschon, Feurey & Kotzas,* attorneys; *Bruce C. Rosetto* on the brief).

*Eugene J. Sullivan* for defendant Atlantic County Board of Elections (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Donna J. Kelly* on the brief).

GRUCCIO, A.J.S.C.

The present controversy revolves around efforts by citizens of Atlantic City to effect the recall of Mayor Michael Matthews. Matthews was elected Mayor of Atlantic City on June 15, 1982

and was sworn into office on July 1, 1982. In March 1983 petitions were circulated seeking support for the recall of Matthews. By June 30, 1983, 1913 signatures were collected endorsing the recall. On August 10, 1983 plaintiff-intervenors filed 964 pages of a petition containing approximately 9000 signatures with defendant Adelaide Deane, the Atlantic City Clerk. On September 1, 1983 after examining the petitions the clerk determined there were 4760 valid signatures. This figure fell short of the 6257 signatures needed to put the recall petition on the ballot. September 1, 1983 was also the date on which plaintiff-intervenors filed an additional 515 pages of the petition containing 4043 signatures.

On September 7, 1983 defendant Deane certified 2173 of the 4043 additional signatures as valid while at the same time reducing the original number of signatures certified on September 1, 1983 from 4760 to 4663. The net result is that 6836 signatures on the recall petition have been certified as valid, exceeding the number of signatures necessary to put the recall question on the ballot by 579 signatures. This factual analysis is taken from the stipulation of facts outlined at a pretrial conference on September 19, 1982.

Cross motions for summary judgment have now been filed with respect to two issues; first, whether signatures collected prior to the mayor completing his first year in office are valid, and second, whether signatures of voters who registered to vote after the original petition was filed but prior to the filing of the amended petition on September 1, 1983 are valid signatures. Both issues are severable from others in the case and require resolution before the remaining factual issues can be adequately addressed.[1] Not only will the determination made in this opinion materially affect the remaining issues, it could render them moot. That fact, coupled with an overriding public

---

[1] All parties agree that, as to these two issues, no further imput will be required before the entry of judgment.

interest in the petition for recall, warrants the conclusion that there is no just reason for delay. Accordingly, the judgment about to be made will be certified as final pursuant to *R.* 4:42–2. *See Leonardis v. Bunnell,* 164 *N.J.Super.* 338 (App.Div.1978), certif. den. 81 *N.J.* 265 (1979).

SIGNATURES OF A RECALL PETITION WHICH ARE OBTAINED DUR-
ING THE FIRST YEAR OF A MUNICIPAL ELECTIVE OFFICER'S TERM
OF OFFICE ARE VALID AND NOT IN VIOLATION OF *N.J.S.A.* 40:69A–168.

█ The first question, whether the circulation of recall petitions and the collection of signatures prior to the mayor having served one complete year of his four-year term of office is violative of *N.J.S.A.* 40:69A–168, is an issue of first impression in this State. Section 168 permits the filing of petitions to recall an elected official only after the completion of one year in office. A finding by the court that signatures collected prior to July 1, 1983 are invalid would result in the elimination of 1913 signatures from the petition, leaving 4923 certified signatures, 1334 short of the required number.

Resolution of the issue hinges on the interpretation of *N.J. S.A.* 40:69A–168. The court is of the opinion that the one-year time limitation contained in *N.J.S.A.* 40:69A–168 is limited in its application to the *filing* of petitions, not the circulation of petitions. A thorough examination of New Jersey case law as well as the case law of other jurisdictions has revealed no reported decision dealing with the issue presented.[2] Resort to the basic principles of statutory construction is thus in order.

█ Instructive in determining statutory construction in New Jersey is *Dvorkin v. Dover Tp.,* 29 *N.J.* 303 (1959), which provides:

[2]Matthews has submitted for the court's consideration *Hare v. Hirkala,* Docket No. L–70013–81 P.W. (1981), an unreported case which runs contra to the opinion expressed herein. However, this court finds the rationale of *Hare* unpersuasive and notes that the determination in *Hare* was not necessary in light of the factual finding of fraud which in and of itself would have voided the recall petition.

A return to the first principles of statutory interpretation teaches that when the lawgiver's intent is in doubt, the court 'ought to interpret the law to be what is most consonant to equity and least inconvenient.' *Kerlin's Lessee v. Bull*, 1 *Dall.* 175, 1 *U.S.* 175, 1 *L.Ed.* 88 (Sup.Ct.Pa.1786); *Associates of Jersey Co. v. Davison*, 29 *N.J.L.* 415, 424 (E. & A. 1860). This is the doctrine of 'equity of the statute....' [at 315]

Specifically, initiative and referendum processes authorized by the Faulkner Act are to be liberally construed subject to governing constitutional and statutory provisions. *Sparta Tp. v. Spillane*, 125 *N.J.Super.* 519, 523 (App.Div.1973), certif. den 64 *N.J.* 493 (1974), citing 5 *McQuillen, Municipal Corporations*, (1969), § 16.48 at 199–200, § 16.50. A liberal construction is necessary in order to satisfy the Faulkner Act purpose of encouraging "public participation in municipal affairs in the face of normal apathy and lethargy in such matters." *Ibid.* Additionally, a liberal interpretation of election statutes is necessary "to effectuate their purposes and to facilitate and not to hamper the exercise by voters of the rights thereby granted to them." 42 *Am.Jur.*2d, *Initiative and Referendum*, § 5 at 645. *D'Ascensio v. Benjamin*, 137 *N.J.Super.* 155, 163 (Ch.Div. 1975), aff'd 142 *N.J.Super.* 52 (App.Div.1976), certif. den. 71 *N.J.* 526 (1976).

With the above admonition, an examination of the provisions of *N.J.S.A.* 40:69A–168 reveals two clear points. First, the Legislature expressly conditioned the *filing* of recall petitions on the completion by an elected official of one year in office. Second, the Legislature has failed to specify any time limitation regarding the *circulation* of petitions for the collection of signatures. No evidence, legislative history or case law has been presented to the court to suggest that the phrase "upon the filing" in *N.J.S.A.* 40:69A–168 was intended by the Legislature to include the circulation of petitions. Such an intention could have easily been manifested by the insertion of a statutory provision dealing with the *circulation* of petitions.[3]

---

[3]See, for example, *California Elec. Code* § 27500, providing for the filing of a notice of intention to *circulate* a recall petition prior to the collection of any

Several cases from foreign jurisdictions have been presented to the court in support of the contention that petitions for recall cannot be circulated and signed prior to an elected official serving one full year in office.

*In Re.Petition for Removal of Frank Bower*, 41 *Ill.*2d 277, 242 *N.E.*2d 252 (Sup.Ct.1968), involved a claim that signatures on a petition seeking to recall a mayor and four city commissioners were fraudulently procured. The Illinois Supreme Court, in discussing the statutory proscription against filing petitions prior to completion of an officer's first year in office, noted that:

> [T]he only logical reason which we can ascribe for requiring the electors to wait one year before *petitioning for a recall election* is to prevent premature action on their part in voting to remove a newly elected official before having had sufficient time to evaluate the soundness of his political policies and decisions. [*Id.* 242 *N.E.*2d at 255; emphasis supplied.]

Matthews suggests that the phrase "petitioning for a recall election" refers to the circulation of petitions. However, this court is convinced that when read in the context of the entire opinion, the phrase "petitioning for a recall election" refers to the filing, not the circulation of petitions.

This conclusion is reached by reading the *Bower* opinion in conjunction with the appropriate Illinois statutes in effect at the time. In addition to a provision restricting the filing of a recall petition to any time after the completion of the official's first year in office, *Ill.Rev.Stat.* 1967, chap. 24, par. 4–7–2, the Illinois Statute also contains a provision which limits the signing of a recall petition to a period of less than four months prior to the filing of the petition, *Ill.Rev.Stat.* ch. 24, par. 4–7–3–(1967) (repealed by *P.A.* 76–594, § 2 effective July 31, 1969). Given the distinction drawn by these two provisions, the Illinois court could not have intended the phrase "petitioning for a recall election" to include the signing of petitions. Compliance

---

signatures. *California Elec. Code* § 27507 then allows for the circulation and signing of petitions seven days thereafter.

with the Illinois statute would permit the collection of signatures any time after the completion of the elected official's first eight months in office so long as the petitions were not filed until after completion of the first year in office. As a result, the *Bower* decision does not support the contention that signatures cannot be collected during the elected official's first year in office.

In *Moore v. Maywood City Council*, 244 *Cal.App.2d* 892, 53 *Cal.Rptr.* 603 (Dist.Ct.App.1966), the California District Court of Appeal held that signatures collected prior to the time period provided by the recall statute were invalid. Reliance on this decision is misplaced. Unlike the New Jersey statute, the applicable California statute in *Moore* specifically prohibited the circulation and signing of recall petitions prior to the filing of a notice of intention to circulate a recall petition. *Id.* 53 *Cal. Rptr.* at 605. Absent a comparable legislative provision in New Jersey, the *Moore* case is not relevant to the issue facing the court today.

The final out-of-state case submitted for consideration is *Taylor v. Thornber*, 418 *So.*2d. 1155 (Fla.App.1982). In *Taylor*, the Florida District Court of Appeal affirmed the decision of the trial court to reject a recall petition *filed* prior to the time prescribed by the applicable statute. The present case does not involve *filing* petitions prior to the statutory time. Therefore the *Taylor* decision provides no guidance in deciding the issues currently before the court.

In sum, the three foreign jurisdiction cases cited by Matthews do not support his position.

■■ The final argument with respect to the circulation of petitions is that the circulation of petitions during the first year in office is disruptive of government and thus was not the intention of the Legislature. There is no support for this contention. An argument could also be made that the circulation of petitions during the first year in office serves to make government aware of public opinion and aids rather than dis-

rupts government. Nonetheless, the right of the electorate to petition its government is constitutionally protected by the First Amendment to the United States Constitution. If the electorate chooses, it can circulate petitions with respect to any issue the very day an official takes office. While this general type of petition cannot have the effect of law absent statutory authorization, it is an effective tool for the electorate to use to affect public policy. The constitutional right to petition is to be distinguished from the right to petition for recall, a statutory right granted by the Legislature. *In Re Petition of Smith,* 114 *N.J.Super.* 421, 435 (App.Div.1971), certif. den. 59 *N.J.* 263 (1971). The statutory right to petition for recall is subject to legislative discretion and this court is bound by the intention of the Legislature as reflected in the statute.

As already indicated, there is no express prohibition in the New Jersey statute against the circulation of recall petitions prior to the completion of an elected official's first year in office. In fact, the Legislature appears to have contemplated the circulation of petitions during that time since it has provided that filing can occur as soon as one day after the completion of the first year in office. *N.J.S.A.* 40:69A–168. If petitions could not be circulated and signatures collected prior to that time, it would be virtually impossible for citizens to file on the initial day that the statute permits. In the present case, it took plaintiffs-intervenors from March 1983 until September 1, 1983 to collect what they hope are a sufficient number of valid signatures. The population of Atlantic City being approximately 25,000 people, it is not unreasonable to assume that the circulation of petitions and the collection of signatures from 25% of the electorate of a much larger city could require significantly more time than six months. Hence, permitting validation of signatures collected prior to July 1, 1983 is not an unduly harsh, unjustified or unintended interpretation of *N.J. S.A.* 40:69A–168. A contrary result would extend the recall process, a device the Legislature obviously did not intend.

Furthermore, the court's decision regarding the collection of signatures prior to the completion of one year in office by an elected official works no great hardship on Matthews. The policy behind the one-year time limit prior to filing is undisputed. The Legislature intended that before an elected official can be subject to a recall election, that official must be permitted a certain amount of time during which he can execute the powers of his office and demonstrate his ability to function in the elected position. Matthews has not been deprived of that opportunity.

Matthews completed his first year in office on June 30, 1983. No petitions were filed with the city clerk prior to that time. If the question regarding the recall of Matthews as Mayor of Atlantic City is eventually put before the voters of Atlantic City, they will have had well over one year to consider the performance of Matthews as mayor. Therefore, the challenge to the validity of signatures collected prior to July 1, 1983 by virtue of their being collected prior to that time is hereby rejected.

A PERSON WHO REGISTERS TO VOTE BEFORE AN AMENDED RECALL PETITION IS FILED, AND WHO IS OTHERWISE QUALIFIED, CAN LAWFULLY SIGN SUCH PETITION AND HIS OR HER SIGNATURE SHOULD BE COUNTED BY THE MUNICIPAL CLERK, IN ACCORDANCE WITH *N.J.S.A.* 40:69A–170.

The second issue ripe for determination is whether persons who registered to vote in Atlantic City after the initial filing of the recall petition on August 10, 1983 were eligible to sign amended recall petitions. The city clerk has refused to consider the signatures of some 700 signers who registered to vote after August 10, 1983.

The pertinent part of *N.J.S.A.* 40:69A–169 provides: "A recall petition shall ... be signed by *qualified* voters ...." Title 40 of *New Jersey Statutes Annotated* does not define the term "qualified voter." However, *N.J.S.A.* 19:4–1 defines a qualified voter as follows:

[E]very person possessing the qualifications required by Article II, paragraph 3 of the Constitution of the State of New Jersey and having none of the

disqualifications hereinafter stated and being duly registered as required by this Title, shall have the right of suffrage and shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere.

In addition to the qualification requirements of *N.J.S.A.* 19:4–1, an individual must be registered to vote at least 40 days prior to a given election in order to qualify to vote in that election. *N.J.S.A.* 19:31–6. Application of *N.J.S.A.* 19:31–6 to the facts of this case results in a finding that in order to be qualified to vote in the November 8 general election an individual must be registered to vote by September 29, 1983.

In light of the above provisions, it seems clear that individuals who registered to vote after the August 10 filing date and prior to the September 1 filing of the amended petition were qualified to sign the amended petition. These individuals are no different than individuals who might have registered to vote on August 9 and then signed the original petition filed August 10. There are no provisions in the statute to support the contention that the date the petitions are originally filed is the final day for citizens to qualify as voters and sign amended petitions.

Matthews relies upon *Citizens for Charter Change In Essex County v. Caputo*, 136 *N.J.Super.* 424 (App.Div.1975), certif. den. 74 *N.J.* 268, 269 (1975) in support of his position that an individual must be a qualified voter at the time the original petition was filed in order to sign an amended petition. Plaintiffs in *Caputo* filed a petition pursuant to the Optional County Charter Law, *L.* 1972, *c.* 154, *N.J.S.A.* 40:41A–1 *et seq.*, seeking to have a question relating to form of government placed on the ballot for the general election. *Id.* at 425. The petition was filed on September 5, 1975, the last possible day that it could be filed to remain eligible for placement on the general election ballot. *Id.* at 427. In affirming the decision of the trial court, the Appellate Division defined "qualified voters" as those persons registered to vote on September 5, 1975, the original filing date. *Id.* at 431. The significance of the September 5 deadline

in *Caputo* cannot be overemphasized. September 5 represented the last day that a petition could be filed to have a referendum issue placed on the November 4, 1975 general election ballot. The *Caputo* court logically and correctly concluded that an individual who was not registered to vote by the September 5 deadline date could not possibly sign a petition to have an issue placed on the November 4, 1975 ballot since the petition itself had to be filed by September 5, 1975. In the present case, if plaintiffs-intervenors desired to have the recall question placed on the November 8, 1983 general election ballot, the original petition could have been filed as late as September 9, 1983 sixty days prior to the general election date *N.J.S.A.* 40:69A–171.

Consonant with this court's reading of *Caputo, supra,* is the decision in *Stone v. Wyckoff,* 102 *N.J.Super.* 26 (App.Div.1968), certif. den. 52 *N.J.* 254 (1968). *Stone* held that an individual is capable of validly signing a recall petition if that person is registered and qualified to vote "by the time the election will have been held." *Id.* 35.

Given the fact that a general election is scheduled for November 8, 1983, logic dictates that a recall election would also be scheduled for that date considering that said date falls within the 60 to 90-day statutory framework of *N.J.S.A.* 40:69A–171 and that holding a recall election and a general election simultaneously would save the taxpayers a substantial amount of money. As hereinbefore stated, a person could register to vote as late as September 29 and still be qualified to vote in the November 8 election.

All signers of the amended recall petitions were registered prior to the September 9 deadline date. They were, in fact, registered to vote prior to September 1. It is important to emphasize that September 9 is a deadline only to the extent that plaintiff-intervenors intended to have the question presented at the November 8, 1983 general election. The statute itself imposes no restriction on the filing of the petition other than

the initial one year period discussed above. If the petition was filed after September 9, 1983 the city clerk, upon certification of the requisite number of signatures, would schedule a special recall election after the November 8 general election. November 8 is in no way a necessary, preferred or sacred date.

The court, therefore, concludes that the signatures on the amended petitions should be reviewed and considered by the city clerk. Registering to vote after the filing of a recall petition does not automatically preclude a person from signing an amended recall petition.