203 N.J. Super. 443 (1985)
497 A.2d 512
JOSEPH MOCCO, RESPONDENT,
v.
JOSEPH PICONE, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 15, 1985.
Decided July 15, 1985.
*444 Before Judges DREIER and SHEBELL.
*445 Joseph R. Mariniello argued the cause for appellant (Mariniello & Oury, attorneys; Joseph R. Mariniello, of counsel and on the brief).
Herbert Klitzner argued the cause for respondent.
Eric J. Bal submitted a brief on behalf of amici curiae Gattoni, DiGiovanni, Corpito, Sacco and Liggio.
The opinion of the court was delivered by SHEBELL, J.A.D.
This appeal concerns issues arising out of application of the statutes governing the recall of commissioners in the Walsh Act community of North Bergen in Hudson County. See generally N.J.S.A. 40:75-25 et seq.
Petitions seeking recall of all five of the Township's commissioners were filed with the municipal clerk on April 15, 1985. On the same day Joseph Mocco, a signer of the petitions, filed a complaint seeking to remove the clerk, Joseph Picone, from his duties. The law division judge denied the application for removal and on April 26, 1985 the clerk pursuant to N.J.S.A. 40:75-44 presented to the court his report of objections to the recall petitions. The court appointed the County Superintendent of Elections to review the clerk's findings and to file a report with the court.
Although the superintendent found more valid signatures than the clerk had found, the court determined that number was insufficient to certify a recall election and entered a "final and binding" order under N.J.S.A. 40:75-44 as to the petitions filed on April 26. This order established which names were acceptable and which were objectionable. On May 6, 1985, the same day the order was executed, the agent for the recall petitioners immediately refiled the same petitions that the clerk had formally returned and also submitted for filing additional petitions with new signatures pursuant to the "ten day correction" provisions of N.J.S.A. 40:75-28.
*446 Seven days later the clerk filed his report after re-examining all of the signatures. He invalidated thousands of signatures on the original petitions which he had previously approved and which had been the subject of the court's earlier order. In addition, the clerk following the May 6 refiling sought to deduct 1,125 names pursuant to withdrawals of signatures obtained allegedly by a "very strenuous campaign" by the incumbents after they received the names and addresses of those who had signed the petitions.
On June 5, 1985 the trial judge, Burrell Ives Humphreys, A.J.S.C., entered an order memorializing his May 6, 1985 decision fixing the number of signatures needed for recall. He used as the base figure the number of registered voters as of the last general election. Further, he disallowed the clerk's challenges to those signatures which were counted in the Court's earlier review and ruled that withdrawal of these signatures was ineffective after the petitions were filed on April 15, 1985.
We denied leave to appeal at that time, but accelerated the clerk's appeal following the June 13, 1985 trial court finding that there were sufficient valid signatures to call an election for the recall of all incumbents. On July 15, 1985 following oral argument we entered an order affirming the various trial court rulings and noted that our opinion would follow. The election was held as ordered on July 16, 1985. We are in substantial accord with the views and reasoning of Judge Humphreys as expressed in his several oral opinions for the Law Division.

I.
Appellant takes the position that all withdrawals filed prior to the corrective second filing of May 6, 1985 should be effective in removing signatures from consideration in tallying the number of recall petitioners. Respondent successfully argued before the trial court that withdrawals should only be permitted up to the point when petitions are first filed and not thereafter. *447 While there is no statutory provision in this State for the withdrawing of a signature from a recall petition, it is beyond dispute that case law has established such a right providing it is exercised prior to filing. See Bachman v. Phillipsburg, 68 N.J.L. 552, 555 (Sup.Ct. 1902); Ford v. Gilbert, 89 N.J.L. 482, 485-86 (Sup.Ct. 1916).
Appellant reasons that the corrective filing pursuant to N.J.S.A. 40:75-28 is a new filing and therefore any signer of the original petition has a right to withdraw prior to the new filing. Appellant notes that in 1977, in an unreported decision involving several of the same parties and the Township of North Bergen, we affirmed a trial court ruling that the refiling could be a new filing, if the petitioners so elected, for the purpose of obtaining a more favorable figure as to the number of signatures needed for recall. The new figure was based upon a general election which intervened between the original date of filing and the date of corrective filing. The trial court held that in such circumstances persons desiring to withdraw could do so prior to the second filing.
We deem it obvious that the Legislature's plan for a workable recall process incorporating means for prompt disposition of objections at various stages would be defeated if further withdrawals were permitted after the recall petitions are filed. Under the legislative scheme enacted, the clerk checks the petitions, files a report which the court summarily examines, ruling forthwith on any and all objections and enters an order which is final and binding on all parties. N.J.S.A. 40:75-28 and -44. If the required number of signatures has not been validated after the court passes on the clerk's objections, the clerk returns the petitions to the filing agent who may act to correct the shortage within a ten day period. N.J.S.A. 40:75-28. The corrective process would be merely an "impossible dream" if the incumbents were permitted to launch a campaign to obtain withdrawals of signatures which have already been approved in a final and binding court order. The recall petitioners would *448 not know from day to day during the ten day corrective period how many additional signatures were needed. Such a result was never intended. Instead, the Legislature provided for a prompt recall vote by the entire electorate no later than forty days after the certificate of notice. N.J.S.A. 40:75-31.
Adoption of Appellant's position could serve to protract unduly the entire recall process by permitting systematic and planned obstruction of the petition process through the soliciting of withdrawals by personal confrontation or even coercion of the signators to the filed petitions. Such a result would be unfair to both the general electorate and the individual signers of the recall petitions. The recall campaign is best directed to obtaining votes which can be exercised freely in the secrecy of the voting booth. We have not been made aware of any public policy which would favor allowing withdrawals at all stages of the recall process. We are convinced that the democratic process of free election is best served by limiting withdrawals to the period prior to the filing of the recall petitions. The trial judge was correct in his ruling on this issue. He has not defeated the rights of those parties desiring to change their position on recalling any incumbent as such persons can both campaign and vote as they choose at the recall election.

II.
The clerk urges that we find that the trial judge erred by allegedly adopting without question the findings of the Superintendent of Elections for Hudson County concerning the validity of signatures on the recall petitions. Appellant points out that in Stone v. Wyckoff, 102 N.J. Super. 26, 31 (App.Div. 1968), certif. den. 52 N.J. 254 (1968), we remanded and required that the judge personally examine the questioned signatures on the original petitions. The clerk's attack is directed at some 959 signatures approved over the objections of the clerk.
The issue concerning these signators however did not as in Stone revolve around a question as to the signatures themselves. *449 Rather, the dispute was as to whether or not the signators were found to be registered voters. The County Superintendent is particularly well suited to carry out such investigations as agent of the court and did so here without objection from the parties. Further, the record clearly reflects that the court afforded the clerk's attorney an opportunity to do further work, for even "a couple of days to challenge them" and instead, counsel stated "... I can agree with the number, but I want to reserve my legal arguments on the new registrations...." Appellant cannot now object.

III.
Appellant maintains that some 285 signators were not registered at the time of the corrective filing and that their signatures should not be counted. He asserts that it would be ludicrous for this court to apply its ruling in Stone v. Wyckoff, 102 N.J. Super. at 35, which permitted persons to sign recall petitions in Faukner Act municipalities so long as they were registered and qualified "by the time the election will have been held." Appellant makes this assertion because in a Walsh Act recall election a qualified person may register up to one week before the election. N.J.S.A. 40:75-39. Thus, the signatures could not be examined and certified by the clerk in the 10 days required by the applicable statutes. N.J.S.A. 40:75-27 and N.J.S.A. 40:75-28.
On the facts presented here appellant's inviting argument need not be considered. The registrations in question were filed within the 10 day correction period allowed under N.J.S.A. 40:75-28 and, as found by the trial judge, about one hour later than the petitions containing signatures challenged as unregistered. We concur in Judge Humphreys' observation that there should be no invalidation where any "deficiency is minor, technical, indeed picayune." Even if the one hour delay constituted a deficiency, it is so minor and technical and without danger of harm that fairness to the voters and the community *450 militate against disallowing these signatures. This is in keeping with long standing policy favoring the electorate in recall matters. See In re Petition of Smith, 114 N.J. Super. 421, 428 (App.Div. 1971), certif. den. 59 N.J. 263 (1971); Westpy v. Burnett, 82 N.J. Super. 239, 246 (App.Div. 1964), aff'd o.b. 41 N.J. 554 (1964).

IV.
Appellant maintains that the number of signators necessary to require a recall election in a Walsh Act community is 25% of the registered voters of the municipality at the time of the filing of the petitions.
The applicable statute, N.J.S.A. 40:75-27, was amended effective August 20, 1984 to provide:
... The procedure to effect the recall of an incumbent of the office of commissioner shall be as follows:
A recall petition signed by at least twenty-five per centum (25%) of the registered voters of the municipality, ....
The bill as introduced in the Assembly contained the following "Introductory Statement":
This bill makes the law concerning recall elections under the commission form of government uniform with the recall election provisions in municipal manager municipalities and Faulkner Act municipalities. All three forms of government will now require that a recall petition be signed by at least 25% of the registered voters in order to be valid. [Assembly, No. 2234, L. 1984, c. 129]
The law under the Faulkner Act was well settled at the time of the Legislature's amending of this statute. We held in 1971 that under N.J.S.A. 40:69A-169 the number of persons registered to vote at the last general election was the base operative figure to be used. In re Petition of Smith, 114 N.J. Super. at 431-34. In light of such clear legislative intent we find no call to deal further with appellant's various arguments on this issue. Appellant's contention that "the amendment of the statute in 1984 shows an intention by the legislature to reference the standard not to the general election but rather to the date of filing" is without foundation.

*451 V.
We affirm the rulings of the trial judge that are disputed in Appellant's points 5, 6 and 7 of his brief. In our view, these issues turn on questions of credibility. We find no warrant to disturb the trial judge's findings as we are not "`convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Tp. of No. Bergen, 78 N.J. Super. 154, 155 (App.Div. 1963), certif. den. 40 N.J. 221 (1963)).
Affirmed.