701 A.2d 478

COMMITTEE TO RECALL THERESA CASAGRANDE FROM THE OFFICE OF SPRING LAKE HEIGHTS SCHOOL BOARD MEMBER, ANNETTE M. SMITH, BETH BERNARDO, AND JOANNE KUCINSKI, PLAINTIFFS, v. THERESA CASAGRANDE; CLAIRE BARRETT, CLERK OF THE BOROUGH OF SPRING LAKE HEIGHTS; LINDA DALY, ASSISTANT SECRETARY OF THE BOARD OF EDUCATION OF THE BOROUGH OF SPRING LAKE HEIGHTS; CLAIRE FRENCH, CLERK OF THE COUNTY OF MONMOUTH; BERTHA SUMICK, SPECIAL DEPUTY COUNTY CLERK, DEFENDANTS.

Superior Court of New Jersey
Law Division
Monmouth County

Decided March 5, 1997.

498

*Kenneth E. Pringle* for plaintiffs The Committee to Recall Theresa Casagrande from the Office of Spring Lake Heights School Board Member (*Pringle & Quinn, P.C.*).

*Thomas M. Comer* for defendant Theresa Casagrande, Chairperson of the Spring Lake Heights School Board (*Rudnick, Addonizio, Pappa & Comer*).

*Jay C. Sendzik* for defendant Linda Daly, Assistant Secretary of the Board of Education of the Borough of Spring Lake Heights (*Law Offices of Jay C. Sendzik*).

*Robert R. Blasi* for defendant Claire Barrett, Clerk of the Borough of Spring Lake Heights (*Law Offices of Robert R. Blasi*).

*Malcolm V. Carton*, Monmouth County Counsel for defendants Claire French, Clerk of the County of Monmouth, and Bertha Sumick, Special Deputy County Clerk.

LEHRER, J.S.C.

### STATEMENT OF FACTS

Defendant Theresa Casagrande is the Chairperson of the Spring Lake Heights School Board, having been elected to a three year School Board term in April of 1995.

After a year of controversy surrounding the Board and its activities, plaintiffs Annette Smith, Beth Bernardo and Joanne Kucinski formed a committee to recall Ms. Casagrande (collectively referred to as the Recall Committee). On December 5, 1996, the recall committee initiated the recall process by filing a notice of intention with Defendant Claire Barrett, Spring Lake Heights Borough Clerk pursuant to the "Uniform Recall Election Law" (*N.J.S.A.* 19:27A–1 et seq.) (Recall Act).

The Recall Committee claims when they filed the Notice of Intention, they believed the position of School Board Secretary had been vacant since the suspension of former School Board Secretary Suzanne Amabile on May 6, 1996 for alleged financial misdeeds; and the Borough Clerk is the proper Recall Election Official in the absence of a Board Secretary as the Borough Clerk is the official to whom all other nominating petitions in the Borough are by law to be submitted.

On December 5, 1996, the Borough Clerk accepted plaintiffs' Notice of Intention, determined that it complied with the requirements of the Recall Act, and returned a certified copy of the approved Notice of Intention to the plaintiffs. The Borough Clerk

served a copy of the approved Notice of Intention on Defendant Casagrande within five business days of its approval as required by *N.J.S.A.* 19:27A–7(b). Thereafter, the Recall Committee submitted a proposed petition to the Borough Clerk for her review in accordance with the provisions of *N.J.S.A.* 19:27A–8(f); and the Recall Committee members began to circulate the petition throughout the Borough.

The Recall Committee is required to gather a number of signatures equal to at least twenty-five percent (25%) of the persons registered to vote on the date of the general election preceding the filing of the Notice of Intention (*N.J.S.A.* 19:27A–5). It is undisputed that the number of signatures required equals 944.

On February 10, 1997, plaintiffs filed a completed petition with the Borough Clerk who reviewed the petition to verify that it contained the correct number of valid signatures.

During this review process, by letter dated February 12, 1997, Ms. Casagrande challenged the Borough Clerk's status as the Recall Election Official for the first time. This was more than two months after Ms. Casagrande was aware of the filing of the "Notice of Intention" with the Borough Clerk.

On February 13, 1997, pursuant to *N.J.S.A.* 19:27A–11, the Borough Clerk informed Ms. Casagrande that the petition contained more than the required signatures; the petition was in compliance with the Recall Act; and pursuant to *N.J.S.A.* 19:27 A–13, unless Ms. Casagrande resigned from office, a recall election would be held on April 15, 1997, the next scheduled School Board election.

On February 19, 1997, the Borough Clerk reversed her prior certification of the recall election and advised the Recall Committee that the petition had been filed too late for an election to be held on April 15, 1997. The Borough Clerk also advised that the recall could not be scheduled for a special election as notice of the cost of such an election had not been affixed to the petition as

provided for by *N.J.S.A.* 19:27A–7(a); and the election could not be scheduled for the next regular school board election in April of 1998 as it would coincide with the end of Ms. Casagrande's term of office. (*See N.J.S.A.* 19:27A–13(a)(2)). The Borough Clerk declared the process void pursuant to *N.J.S.A.* 19:27A–11.

The Recall Committee filed the instant action seeking to have the recall petition certified and a recall election scheduled for a special election at a date to be determined in accordance with *N.J.S.A.* 19:27A–13.

## RIGHTS UNDER THE RECALL ACT ARISE FROM THE NEW JERSEY CONSTITUTION AND SHOULD BE LIBERALLY BUT CAREFULLY CONSTRUED TO PROTECT CLEAR AND UNAMBIGUOUS LEGISLATIVE MANDATE

On November 2, 1993, the citizens of the State of New Jersey overwhelmingly voted to amend Article I, Paragraph 2 of the New Jersey Constitution to establish the right to recall local, state and federal elected officials. The language of the amendment states in part:

"The people reserve unto themselves the power to recall, after at least one year of service, any elected official in this State or representing this State in the United States Congress. The Legislature shall enact laws to provide for such recall elections. Any such laws shall include a provision that a recall election shall be held upon petition of at least 25% of the registered voters in the electoral district of the official sought to be recalled."

On May 17, 1995, the Legislature of the State of New Jersey enacted the "Uniform Recall Election Law", *N.J.S.A.* 19:27A–1 et seq. implementing this amendment to the Constitution. *See: N.J.S.A.* 19:27A–2.

Until the adoption of this law, the right to recall elected officials was only available in New Jersey's Thirty Two Walsh Act (Commission form) Municipalities (*N.J.S.A.* 40:70–1 et seq.); Seven Manager Act Municipalities (*N.J.S.A.* 40:79–1 et seq.); 125 Faulkner Act Municipalities (*N.J.S.A.* 40:69A–1 et seq.); and the 6 counties operating under the Optional County Charter Law (*N.J.S.A.* 40:41–1(a)).

The Uniform Recall Election law repeals all previous recall laws. *N.J.S.A.* 19:27A–18.

■ New Jersey courts carefully construed the predecessor recall laws noting that the legislature could specify "rational restraints" upon the exercise of those rights, and deferred to the intention of the legislature as reflected by those acts. *Roman v. Sharper*, 53 N.J. 338, 250 A.2d 745 (1969). *See also, Petition of Smith*, 114 N.J.Super. 421, 276 A.2d 868 (App.Div.1971). Nevertheless, New Jersey courts have consistently recognized an "overriding public interest in the petition for recall," and have held that such laws are to be "liberally construed subject to governing constitutional and statutory provision." *See Baker v. Deane*, 196 N.J.Super. 416, 419–421, 483 A.2d 218 (Law Div.1983).

■ The liberal interpretation of prior, now repealed, recall legislation is in accord with the liberal construction that courts have given to election laws generally. Liberal construction has been held necessary "to effectuate their purposes and to facilitate and not to hamper the exercise by voters of the rights thereby granted to them." *Id.* at 421, 483 *A*.2d 218. Election laws should not be "construed so as to deprive voters of their franchise." See *Madden v. Hegadorn*, 236 N.J.Super. 280, 565 A.2d 725 (Law Div.1989) aff'd 239 N.J.Super. 268, 571 A.2d 296 (App.Div.1989); *Wene v. Meyner*, 13 N.J. 185, 197, 98 A.2d 573 (1953); *Kilmurray v. Gilfert*, 10 N.J. 435, 440, 91 A.2d 865 (1952). Courts must assume the Legislature intended a reasonable approach, and should construe the statute to provide one if possible. *Roman v. Sharper*, 53 N.J. 338, 341, 250 A.2d 745 (1969).

■ New Jersey cases mandate the liberal interpretation of election laws to effectuate the intent of the legislature and facilitate the right of voters to be heard at the polls. However, a court may not substitute its own idea of what a statute should provide in the face of clear and unambiguous statutory requirements.

In *Leers v. Diehl*, 11 N.J.Misc. 525, 167 A. 216 (1933), the court was faced with a recall petition that listed reasons for the recall of

an elected official. The Clerk had refused to certify the petition since the reasons listed were not "sufficient" for recall. The statute required the petition must state sufficient reasons for the action being taken. The court in *Leers* held the determination of what is or is not sufficient is one for the voters and not for the Clerk. It is inappropriate for the courts to second guess the conditions created by the Legislature for recall elections. It is only the function of the court to interpret conditions that are not clear and unambiguous on their face.

In another context, the Supreme Court stated in *Dvorkin v. Dover Township*, 29 N.J. 303, 315, 148 A.2d 793 (1959):

"A return to the first principles of statutory interpretation teaches that when the law giver's intent is in doubt, the court ought to interpret the law to be what is most consonant to equity and least inconvenient."

In *The Matter of Municipal Election Held on May 10, 1994*, 139 N.J. 553, 656 A.2d 5 (1995), a write-in candidate challenged the counting of votes since numerous persons, who had written in his name, were not counted as having voted for him. The statute required that a write-in voter write the name of the candidate in the appropriate spot on the ballot and punch out the plus sign adjacent to the write-in line. Numerous voters had written in the candidate's name, yet failed to punch out the plus sign next to the candidate's name. The candidate appealed stating that the failure to count these votes was a technical adherence to the rules. The petitioner argued that clearly by writing his name on the ballot, they had evidenced their intention of voting for the petitioner, and that the failure to punch out the plus sign next to the name was merely a technical oversight.

In making the decision, the Supreme Court noted the dichotomy of the rules of construction in election cases. The Court noted that the regulations surrounding elections are legislative matters and the Court is not to question the wisdom of the Legislature but simply respect the legislative scheme. *Id.* at 558, 656 A.2d 5. The Court also stated that the canons of statutory construction mandate the liberal construction of election laws, but a Court must not attempt to achieve its own goals, it must attempt to effectuate the

underlying legislative purpose. The Supreme Court ruled that the writing of the candidates name on the ballot without also punching the plus sign in the election card made the ballot ineffective since it did not comply with the clear and unambiguous legislative mandate.

## UNDER THE PARTICULAR FACTS OF THIS MATTER, THE FILING OF THE RECALL PETITION WITH THE BOROUGH CLERK DOES NOT VOID THE PROCESS

■ It is undisputed that the Notice of Intention to Recall and the actual recall petition were filed with Defendant Claire Barrett, Clerk of the Borough of Spring Lake Heights. In enacting the Recall Act, the Legislature intended that the recall committee file its Notice of Intention and petition with the governmental official who by law receives petitions for nominations for the office of the official sought to be recalled. This intention is clearly set forth in the preamble to the Statute which states:

"The recall process would be commenced by the filing of a Notice of Intention by the sponsors of the recall effort with the official authorized by law to receive nominating petitions for the office of the official sought to be recalled."

This intent was carried out by the enactment of *N.J.S.A.* 19:27A–6 which requires, prior to collecting any signatures, the sponsors of a recall petition shall file a Notice of Intention with the appropriate recall election official. *N.J.S.A.* 19:27A–3 defines the recall election official as the official authorized by law to receive nominating petitions for the elective office in dispute.

*N.J.S.A.* 19:60–5 requires each nominating petition for a candidate to be voted upon at a school board election shall be addressed to the Secretary of the Board of Education; and *N.J.S.A.* 18A:14–9, provides candidates for a School Board Election shall be nominated by a petition filed with the Secretary of the Board of Education of the district. It is clear that under normal circumstances the recall process starts with a filing with the Secretary of the Board of Education.

In this matter the Spring Lake Heights Board of Education Secretary, Susan Amabile, was suspended from her post on May

20, 1996 for reasons of alleged misconduct. Charges are currently pending. The Board could not simply remove Ms. Amabile as secretary; she is tenured. Absent her resignation, the Board was required to name an acting secretary until Ms. Amabile's matter was resolved. Dr. Maryanne Piefly was appointed to the position of interim Board Secretary in August of 1996, and in November, 1996, Linda Daly was appointed Assistant Secretary of the Board.

The Committee states in the verified complaint, as a result of the suspension and the resultant confusion, they were unaware of the true status of the Secretary; therefore, they filed the Notice of Intention and petition with the Borough Clerk.

■ This court holds that extreme caution should be taken by those involved in the recall process to follow the letter and spirit of the law. The mandates of the Uniform Recall Election Law are clear; the Borough Clerk is not the appropriate Recall Election Official for the School Board. However, under the unusual circumstances of this particular matter, the failure to file with the Secretary of the School Board is not fatal to the process.

The confusion and controversy surrounding the Borough of Spring Lake Heights Board of Education and its secretary since May 20, 1996, has been clearly demonstrated. The court accepts as true the Recall Committee's claim they were unaware of the true status of the office of the Board Secretary until the filings in this litigation.

*N.J.S.A.* 19:23-6 provides:

"Petitions nominating candidates to be voted for by the voters of a political party throughout the entire state or any subdivision thereof more than a single county or any congressional district shall be addressed to the Secretary of the State. Petitions nominating candidates to be voted for by the voters of a political party throughout a county or any county election district or subdivision of a county comprising more than a single municipality, shall be addressed to the Clerk of the County. *All other petitions shall be addressed to the clerks of municipalities.*" (Emphasis added).

The Borough Clerk is the official authorized by law to receive nominating petitions for other Borough elective offices. The court finds that the mistaken filing of the recall petition with the

Borough Clerk under these circumstances was in good faith with no intent to gain undue advantage. Filing with the Borough Clerk is logically and legally correct absent a Board of Education Secretary, therefore, the good faith mistaken filing under these facts should not be fatal to the recall effort.

The original notice of intention was filed with the Borough Clerk on December 5, 1996. Pursuant to the Uniform Recall Election Law, the Borough Clerk served Ms. Casagrande with a copy of the Notice of Intention within five days of its approval and also published a copy of the notice of intention in the local newspaper within two weeks of its approval. Ms. Casagrande had notice of the recall effort and the fact that the Borough Clerk was functioning as the Recall Election Official. Neither Ms. Casagrande, any school board representative, the interim School Board Secretary, the Assistant Board Secretary, or any member of the public raised any objection to the Borough Clerk serving in that capacity. The substantial effort of the Recall Committee and the petition drive were permitted to go forward without objection. The first objection came on February 12, 1997 from Ms. Casagrande, two days after the required number of signatures were submitted to the Borough Clerk.

■ Technical mistakes made in good faith pertaining to ministerial functions should not be permitted to deprive citizens of their franchise or render an election void for technical reasons. In *Pritel v. Burris*, 94 N.J.Super. 485, 229 A.2d 257, (App.Div.1967) petitions were filed late by a few minutes. The court stated at page 493, 229 A.2d 257:

"Those who signed the petitions because they believed in plaintiff's candidacy, and those voters of Cherry Hill Township who would want to express their confidence in her at the polls on May 9, 1967, should not be deprived of their privileges by so minor a deviation from the Faulkner Acts 46–day–4 p.m. provision."

In *Mitchell v. Tolan*, 33 N.J.L. 195 (Sup.Ct.1868), the court upheld an election for officers of a municipal corporation held on a wrong day; without objection; and by pure mistake; which was not discovered by any office holder, candidate or voter until after the election. The court reasoned that the election, which was

participated in by a large majority of the voters, should be sustained as there was no pretense of fraud or corrupt motive on the part of any person concerned in the election.

In *Mocco v. Picone,* 203 N.J.Super. 443, 497 A.2d 512 (App.Div. 1985) the Appellate Division noted at pages 449–450, 497 A.2d 512:

"Even if the one hour delay constituted deficiency, it is so minor and technical and without danger of harm that fairness to the voters and the community militate against disallowing these signatures. This is in keeping the long standing policy favoring the electorate in recall matters."

The Uniform Recall Election Law was enacted to eliminate uncertainty in the recall process by setting specific time limits and checks and balances. The Recall Act provides that the sponsors of a recall petition must file a "Notice of Intention" with the Recall Election Officer. *N.J.S.A.* 19:27 A–6. The Recall Election Official must then review the Notice and within three business days, either approve the Notice or send its sponsors a written statement indicating why the notice is not approved. If there is a problem with the Notice, the sponsors are permitted to submit an amended Notice. *N.J.S.A.* 19:27A–7(a). Within five business days of approving the Notice, the recall election official is required to serve a copy of the approved Notice on the official sought to be recalled. *N.J.S.A.* 19:27A–7(b). The official sought to be recalled is then permitted five business days to respond to the Notice. *N.J.S.A.* 19:27A–7(c). These provisions were clearly designed to raise any issue of non-compliance at the beginning of the petition process before the Recall Committee embarks upon the difficult task of gathering the required number of signatures.

It is undisputed that Ms. Casagrande did not challenge the Borough Clerk's status as the Recall Election Official within the five day period permitted by the Recall Act, nor did anyone else. Ms. Casagrande did not raise the issue when the Borough Clerk approved the form of the petition, nor did anyone else. Rather, Ms. Casagrande waited for two months to raise the issue and did so only after the Recall Committee had accomplished the grueling work of gathering the signatures of 25% of the registered voters and filed their petition. Ms. Casagrande had ample opportunity

for (almost 2½ months) to raise the issue; she did not. Ms. Casagrande was well aware of the movement against her and all the efforts on the part of the Committee. Under these circumstances, Ms. Casagrande should not be permitted to wait to see if the efforts of the committee are successful and, then after they are, challenge them on purely technical grounds. The technical aspects of the Recall Law should be interpreted with equity and fairness in mind. *Dvorkin v. Dover Township,* 29 N.J. 303, 148 A.2d 793 (1959).

The voiding of the petition on the grounds that the Recall Committee failed to identify the correct recall election official is not warranted where, as here, the duties of the Recall Election Official are ministerial in nature. The Borough Clerk, by law, serves as the Recall Election Official in all other Borough elections and is fully familiar with all the requirements of the Recall Act. By designating a Recall Election Official, the Legislature obviously intended to designate a single official to be responsible for the administrative notices and other actions required by the Recall Act and monitor the process. Ms. Casagrande has not alleged improper action on the part of the Borough Clerk. In fact, the clerk has voided the petition on other grounds. The intent of the Legislature has not been subverted as a result of the Borough Clerk's acting as the Recall Election Official. The Borough Clerk has executed all of the duties of the Recall Election Official properly and in good faith. Therefore, under the circumstances presented, the petition and process is not void due to the Borough Clerk acting as the Recall Official.

## THE NOTICE OF INTENTION AND RECALL PETITION ARE VOID FOR FAILURE TO COMPLY WITH THE PROVISIONS OF N.J.S.A. 19:27A–7(a) AS THE COMMITTEE FAILED TO SPECIFY THE ESTIMATED COST OF CONDUCTING THE SPECIAL ELECTION

█ The petition seeks to have a recall election at the next general School Board election on April 15, 1997. This cannot be accomplished given the time frames set by the Act.

*N.J.S.A.* 19:27A–12 provides, upon the Recall Election Official certifying the petition, the official sought to be recalled has ten business days within which to file a challenge to the petition. Therefore, as the petition was filed on February 10, 1997, Ms. Casagrande had until the end of February, 1997, to file a written challenge to the determination of the Recall Election Official.

Thereafter, the Recall Election Official has an obligation to determine, in an expedited fashion, the validity of the objection. Assuming that this could be accomplished within one business day, if the Recall Election Official determined that Ms. Casagrande's objections were not valid, Ms. Casagrande would have ten business days within which to determine if she should file an action in the Superior Court challenging the determination of the Recall Election Official. This action would be filed in the Superior Court in the middle or later part of March. Assuming that the challenge would be heard and decided on the day it was filed, and further assuming the Court were to determine that the objections of Theresa Casagrande invalid, the Recall Election Official would then issue a certificate as to the sufficiency of the petition and serve it upon the elected official sought to be recalled by regular or certified mail.

Thereafter, Ms. Casagrande had five business days within which to determine if she would resign from office. If, after the end of five business days she has not resigned, the Recall Election Official would order a recall election on the date indicated in the certificate. However, the Recall Election Official is constrained to wait at least 55 days following the 5th business day following the service of the certification on the elected official. Applying the most conservative approach to the Recall Act, statutory mandates and time frames, the election cannot be held on April 15, 1997; the Borough Clerk's ruling is factually and legally correct.

The Borough Clerk also concluded that the recall election could not be held at the next regular election, which would occur on November 4, 1997. Ms. Barrett determined that date would be less than six months before the regular election at the end of

Defendant Casagrande's term (April 21, 1998) and that holding the recall election on November 4, 1997 would be prohibited by *N.J.S.A.* 19:27A–13(a)(2). She, therefore, declared the petition to be void.

The Plaintiff Recall Committee argues that Ms. Barrett was in error and that the recall election should be held at the next general election on November 4, 1997, 5½ months before the April 21, 1998 when Ms. Casagrande's position on the Board of Education will be again before the voters.

The Committee to Recall argues that the six month restriction should not be construed as mandatory. If it were to be construed as mandatory, it would have the effect of unduly narrowing the window of opportunity within which citizens could exercise their right of recall, particularly in cases where the elected official only serves a three year term.

■ The court does not agree. This court has no power to substitute its own idea of what a statute should provide in the face of clear and unambiguous statutory requirements. *Leers v. Diehl* 11 N.J.Misc. 525, 167 A. 216 (1933); *Dvorkin v. Dover Township,* 29 N.J. 303, 148 A.2d 793 (1959); *In the Matter of Municipal Election Held on May 10, 1994,* 139 N.J. 553, 656 A.2d 5 (1995).

The Legislative mandate of *N.J.S.A.* 19:27A–4 is clear and unambiguous; no recall election be held within the first year of an elected officials term. An elected official must be given time to learn the office, become familiar with the issues and perform duties before a recall can take place. The recall process is not to be used as a second general election, but as a process to redress public officials who have not performed to the satisfaction of the electorate given a reasonable opportunity to do so.

Likewise, both *N.J.S.A.* 19:27A–4 and *N.J.S.A.* 19:27A–13(a)(2) clearly and unambiguously state no recall election can be held within the last six months of a term. The legislature has indicated that hard earned tax dollars should not be utilized to hold an

additional election when in less than six months the public will have its opportunity to speak.

The law givers intent is not in doubt; the recall cannot be held at the next general election on November 4, 1997. *Dvorkin v. Dover Township*, 29 N.J. 303, 148 A.2d 793 (1959).

## THE COURT IS WITHOUT JURISDICTION OR AU-THORITY TO CONVERT THE PETITION TO A REQUEST FOR A SPECIAL ELECTION

■ At the oral argument on the return of the Order to Show Cause, the plaintiffs asserted that the court should convert the petition to a request for a special election and order that special election to be held. The court is without the authority to make such a conversion.

The Recall Act sets forth specific, clear and unambiguous requirements that must be followed if the committee is seeking recall at a special election. These provisions were not followed and, therefore, *N.J.S.A.* 19:27A–7 mandates any attempt to convert the petition to one calling for a special recall election be void.

*N.J.S.A.* 19:27A–6 requires a request to recall an elected official at a special election must be specifically set forth in the original Notice of Intention filed with the appropriate recall election official. Here the committee filed a Notice of Intention and stated that they were seeking a recall at the next general election on April 15, 1997. No provision of the Statute allows for an amendment of the Notice of Intention after the petition has been circulated and filed.

*N.J.S.A.* 19:27A–7 further requires that if the committee seeks a recall at a special election, the recall election official shall prepare an estimate as to the cost of conducting the recall election, which shall be added to the Notice of Intention.

*N.J.S.A.* 19:27A–8 requires all of the information contained in the Notice of Intention, including the cost of a special election, must be included on all sections of the petition.

The petition filed made no reference to the added cost of a special election, therefore, the Recall Election Official cannot lawfully certify the petition for a special election. The Recall Act mandates the public be given all the information necessary to make an informed choice. The public must be informed that by signing the recall petition for a special election they will be spending school board monies for elections not books. The court has no power to alter this clear and unambiguous mandate.

The committee urges they should be permitted to bear the cost of the recall election so that they do not have to start the process over again. No authority has been found by this court for private funding of public elections anywhere in American History or American Jurisprudence.

The provisions of the Uniform Recall Election Law make the funding of a special election by the committee improper. *N.J.S.A.* 19:27A–17 sets forth the manner in which the committee can raise funds, and the items upon which those funds can be spent. Specifically, *N.J.S.A.* 19:27A–17(a) authorizes the committee to use the funds raised only for the payment of campaign expenses, the payment of overhead and administrative expenses related to the operation of the committee or the pro rata repayment to contributors of unused funds. Other uses of recall monies are prohibited. The payment of any monies or the incurring of any liability in excess of that permitted by law makes the election process subject to challenge. *N.J.S.A.* 19:29–1(b). Only the school board may fund the election by law. *N.J.S.A.* 19:60–12.

Free and open elections of public officials should not be funded by private individuals. This concept is unprecedented in American History or American Jurisprudence. Public elections should not be for sale to anyone no matter how well intentioned. Groups able to raise funds, and wealthy individuals should not be able to dictate the recall process for public officials that displease them while the less economically advantaged would not be entitled to the same consideration.

■ The committee failed to properly follow the legislative requirements for a recall election. These requirements are clear, specific and unambiguous; they are not subject to interpretation or relaxation by this court. No statutory or case authority permits this court to convert the petition to a request for a special election absent the public being notified in the petition of the cost of the recall election. Had the public been aware that the recall election would be paid for by the use of additional taxpayer dollars, they may not have signed the petition. The public must be informed of the cost in order to make an informed decision.

## THE ACTION OF THE BOROUGH CLERK
## IN DECLARING THE PETITION
## VOID IS SUSTAINED

On February 19, 1997, the Spring Lake Heights Borough Clerk declared the recall petition for the recall of Theresa Casagrande from the office of Spring Lake Heights School Board member void. Under the facts and circumstances herein presented, the Borough Clerk may properly act as the Recall Election Official and the rulings of the Borough Clerk are correct. The action voiding the petition is sustained. The Order to Show Cause is discharged and the complaint is dismissed.