261 N.J. Super. 5 (1992)
617 A.2d 666
THOMAS D. SHEPPARD AND MATHILDE M. SHEPPARD, HIS WIFE, PLAINTIFFS, AND PAUL BALDASSANO AND ANNE M. BALDASSANO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF FRANKFORD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1992.
Decided November 20, 1992.
*7 Before Judges PRESSLER, MUIR, Jr., and KESTIN.
Kovach, Fitzgibbons & Goovaerts, attorneys for appellants (Michael S. Hanusek, on the brief).
Kelly, Gaus & Holub, attorneys for respondents (Megan A. Ward, on the brief).
The opinion of the court was delivered by MUIR, JR., J.A.D.
We hold on this appeal the trial court mistakenly exercised its discretion when it denied plaintiffs' application for a mandatory injunction to abate or rectify a continuing nuisance created by defendant's disposal of storm water runoff onto plaintiffs' property. The trial court denied the application after a jury found defendant created a continuing nuisance and did not have exemption from liability under the Tort Claims Act. N.J.S.A. 59:2-3 (no exemption based on allocation of resources exists where the conduct is palpably unreasonable).
The jury heard evidence that indicated defendant, since a 1947 modification to a drainage system, has discharged storm water through an eighteen-inch outfall pipe into a drainage ditch between the property of plaintiffs Thomas and Mathilde Sheppard and the property of plaintiffs Paul and Anne Baldassano. The ditch ends at Culver Lake, on which the plaintiffs' properties front. Prior to 1947, the discharge came from two ten-inch pipes that drained a smaller area. Over the years *8 changes have been made to the storm water collection system, which now covers an area variously described as between forty-eight and one hundred acres. The defendant modified the system in 1980, adding a new catch basin and almost three-hundred feet of pipe in place of a natural drainage ditch. In 1984 it installed another catch basin directly across the street from plaintiffs' properties.
The 1947 storm drainage system enhanced, concentrated, and sped up the flow of the storm water into the drainage ditch. Each modification thereafter has had similar additive effects. Those changes have been causing flooding of plaintiffs' summer cottage properties. Plaintiffs continuously sought relief from defendant. From the 1947 improvement through the 1980's, plaintiffs requested the defendant abate the storm water discharge. At one point, plaintiff Thomas Sheppard, a civil engineer, offered an alternative design to divert the water elsewhere. On all occasions the defendant, through its elected officials, rebuffed plaintiffs' requests. The evidence reflected circumstances from which the jury could have concluded defendant unreasonably enhanced, accelerated, and concentrated storm water discharge onto the plaintiffs' properties through the eighteen-inch outfall pipe. See Armstrong v. Francis Corp., 20 N.J. 320, 329, 120 A.2d 4 (1956); Gould & Eberhardt, Inc. v. City of Newark, 6 N.J. 240, 243, 78 A.2d 77 (1951); Hopler v. Morris Hills Reg. Dist., 45 N.J. Super. 409, 414, 133 A.2d 336 (App.Div. 1957), all of which collectively stand for the proposition that lower land property owners have rights to relief for the unreasonable discharge onto their properties of storm water by others, including local governmental agencies, and that storm water engendered by hurricanes or other inordinately heavy rainfalls is reasonably foreseeable in assessing the unreasonableness of the conduct of the dischargers. The evidence also reflected the storm water discharge constituted a nuisance in that it unreasonably interfered with plaintiffs' use and enjoyment of their summer lakeshore properties. See Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 449, 149 *9 A.2d 599 (1959). The jury found defendant's conduct constituted a continuing nuisance  a finding not at issue on this appeal.
Nonetheless, the jury found the plaintiffs failed to prove the continuing nuisance proximately caused any of the damages claimed. Plaintiffs essentially limited their damage claims to deterioration of the footings of, and the effect thereof on, the Baldassanos' summer cottage. In light of other evidence which suggested other causes for the deterioration, the jury, during its deliberation, raised a question whether it could determine liability, find no damages, and then "require the plaintiff and defendant to enter into an agreement to alleviate the overflow of the drainage ditch." That question may have been engendered by the refusal of the trial court, on defendant's request, to charge the jury on nominal damages. See Gray v. Serruto Builders, Inc., 110 N.J. Super. 297, 315-17, 265 A.2d 404 (Ch. Div. 1970) (nominal damages will be presumed with the encroachment of an established right). The trial court, in response to the jury question, told the jury to resolve only the nuisance issue and that it would determine all issues of equitable relief.
Despite the jury finding of a continuing nuisance, the trial court rejected plaintiffs' ensuing application for injunctive relief. The court based its denial on the absence of a damage award and the fact that the only proposal for alleviating the nuisance presented by plaintiffs would simply shift the burden to someone else. The ruling and its reasoning overlooked both the appropriate criteria for evaluating whether an injunction should issue and the reasonable solution suggested by the jury's question during deliberation.
Permanent injunctive relief is an appropriate remedy to abate a continuing nuisance. See Sans v. Ramsey Golf & Country Club, Inc., supra; Rose v. Chaikin, 187 N.J. Super. 210, 453 A.2d 1378 (Ch.Div. 1982). Whether such relief should be granted is normally left to the sound discretion of the trial court. Nonetheless, trial court resolution of any application for *10 such relief is always subject to appellate review on the issue of mistaken exercise of that discretion. See Zoning Bd. of Adj. v. Service Elec. Cable T.V., 198 N.J. Super. 370, 379, 487 A.2d 331 (App.Div. 1985).
To serve as guidelines for resolution of an application for injunctive relief, the Restatement (Second) of Torts has identified a comprehensive, though not exclusive, list of relevant factors. Those factors are (1) the character of the interest to be protected; (2) the relative adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to plaintiff if relief is denied, and hardship to defendant if relief is granted; (6) the interests of others, including the public; and (7) the practicality of framing the order or judgment. Restatement (Second) of Torts § 936 (1977). To the extent the factors are present, the judicial process is to weigh and balance each factor in a qualitative rather than quantitative manner. See Crane v. Essex Fells, 67 N.J. Super. 83, 91, 169 A.2d 845 (Ch.Div. 1961).
In the context of these principles and guidelines, we are satisfied the trial court should have granted injunctive relief. The court had before it the decision of the jury affirming the existence of the unrestrained and continuing commission of a tort of nuisance  the continuous and unreasonable interference with use and enjoyment of plaintiffs' summer vacation facilities. Indisputably, the nuisance implicated a substantial property right that required protection. That need for protection, when weighed with the inadequacy of alternative relief which would require plaintiffs to bring continuous actions for damages each time their property is flooded, ordained issuance of an injunction. In the absence of any inordinate delay in bringing *11 suit[1] or misconduct on plaintiffs' part, there is no counter-balance to such a conclusion.
Moreover, it is beyond cavil that denial of the injunction creates a much greater hardship to plaintiffs than its grant would impose on the defendant. Imposition of costs of abatement of the nuisance on the defendant and, consequently, its taxpayers is a minimal hardship when compared to the cost imposition on the plaintiffs. That imbalance of hardship gives additional weight to justification for an injunction.
Finally, there is no evidence of impracticality in framing or enforcing a mandatory injunction order. Even though R. 4:52-4 requires an injunctive order "shall be specific in its terms," there is nothing that precludes an order requiring the defendant abate the nuisance by installation of an alternative drainage system or, as the jury suggested, by designing and installing a system that alleviates "the overflow of the drainage ditch." By framing the order in that way, no impracticability exists and the most viable alternative then lies in the hands of the defendant. Again, qualitative balance favors the injunction.
We recognize issuance of the alternative relief may raise disputes as to the most appropriate alternative, or the most effective design, or both. Resolution of such issues is well within the competency of the trial court. However, the injunction must issue, and defendant's concern for cost and the number of DEPE permits required to abate the nuisance have no bearing on the appropriate alternative or design.
In sum, we conclude the jury finding of no damage was supported by the evidence as a whole. We also conclude, given the clearly indisputable balance of the Restatement's relevant *12 factors in favor of injunctive relief, the trial court mistakenly exercised its discretion when it refused injunctive relief after the jury finding of continuous nuisance.
Accordingly, the judgment is affirmed to the extent it embodies the jury verdict on damages. It is reversed to the extent it denies injunctive relief. The matter is remanded to the trial court for entry of a mandatory injunction in appropriate terms consonant with this opinion. Any counsel fee claim must be presented to the trial court on remand.
NOTES
[1] Plaintiffs indisputably tried many times to negotiate an alternative solution only to be rebuffed by defendant, which offered no alternative solutions. It is refreshing in this litigious society to see a complainant seek resolution through negotiation before bringing suit.