904 A.2d 725 (2006)
387 N.J. Super. 387
Matthew T. RINALDO and Sherry J. Rinaldo, Plaintiffs-Appellants,
v.
RLR INVESTMENT, LLC, R & L Carriers, Greenvest, 206 Associates and New Jersey Department of Environmental Protection, Defendants-Respondents, and
James N. Gray Company, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2006.
Decided August 14, 2006.
*727 Robert M. Vreeland argued the cause for appellant.
*728 Alfred R. Scerni, Jr., Pleasantville, argued the cause for respondents RLR Investment, LLC, R & L Carriers and Greenvest (Giovanna Lombardo, on the brief).
William A. Schnurr, Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (Zulima V. Farber, Attorney General, attorney; Michael Haas, Assistant Attorney General, of counsel; Mr. Schnurr, on the brief).
Before Judges SKILLMAN, AXELRAD and SABATINO.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether an applicant for a wetlands permit who proposes to mitigate the adverse impact upon wetlands of a development project on its property at an off-site location must give notice to owners of property within 200 feet of the mitigation site. We conclude that such notice is required if the proposed wetlands mitigation project involves the disturbance of existing wetlands. This appeal also involves issues concerning the availability of injunctive relief to parties who claim that a mitigation project has caused damage to their property and the proper allocation of jurisdiction within the Superior Court over claims against private parties joined in the same complaint as a challenge to a final decision of a State administrative agency.
In 2001, a predecessor in title to defendants RLR Investment, LLC and R & L Carriers (referred to collectively as R & L) applied to the Department of Environmental Protection (DEP) for a freshwater wetlands permit to construct an access road to a proposed trucking facility in Burlington Township. A wetlands permit was required because the proposed road would pass through freshwater wetlands regulated under the Freshwater Wetlands Protection Act (FWPA), N.J.S.A. 13:9B-1 to -30.
Because the proposed road would adversely impact wetlands, R & L was required to submit a wetlands mitigation proposal. To satisfy this requirement, R & L proposed to create forested wetlands and enhance existing agricultural wetlands on another property located in Springfield Township.
Plaintiffs own a 152-acre farm that abuts the property on which R & L proposed to construct this mitigation project. However, plaintiffs were not given any notice of R & L's application to the DEP for approval of the project.
On September 23, 2003, the DEP granted R & L's application for a wetlands permit authorizing construction of the access road, subject to the condition that R & L mitigate for the wetlands disturbance on this site through "creation of 1.197 acres of forested wetlands at an off-site wetland mitigation project ... conducted prior to or concurrent with the construction of [the access road]." This permit was subsequently amended to require creation of 2.394 acres rather than 1.197 acres of forested wetlands on the mitigation site.
By a letter dated January 30, 2004, the DEP approved R & L's proposed wetlands mitigation project for the Springfield Township site.
Plaintiffs first became aware of R & L's proposed wetlands mitigation project around the time of this approval, when a person representing R & L called plaintiff Matthew Rinaldo. According to Rinaldo, he then called the DEP and spoke to an official who assured him that there were various unresolved issues regarding the mitigation project, which he would have "plenty of opportunity to address" before *729 the project went forward. However, less than two months later, on March 15, 2004, workmen appeared on the site with construction machinery, including a backhoe, bulldozer, roller and earth moving dump trucks, and began construction of the project. On March 18, 2004, Rinaldo sent a letter to the DEP objecting to the commencement of the mitigation project, which he claims was ignored.
On April 5, 2004, plaintiffs brought this action in the Chancery Division, seeking to enjoin continued construction of the mitigation project, a mandatory injunction requiring repair and restoration of the damage R & L had already done to their property, and money damages. Plaintiffs alleged that the workers constructing the project had built a fifty-foot wide road extending the entire southern length of their property and, in the course of building this road, trampled and crushed bushes, cut down and thinned out trees, and elevated the ground with rocks and fill. Plaintiffs also alleged that the workers drove construction machinery over their farmland, crushing and trampling vegetation. They further alleged that the workers dug holes in the ground and placed pink flags around a pond, the rear tree line and fields on their property.
The complaint named not only RLR Investments and R & L Carriers as defendants, but also James N. Gray Company and Greenvest, which were involved in the design, planning and construction of the mitigation project, and the owner of the property, 206 Associates. The complaint asserted various tort claims against these defendants, including trespass, intentional interference with property rights, nuisance, conversion of water supply and negligence. In addition, the complaint joined the DEP as a defendant and sought a declaration that the DEP's approvals of R & L's wetlands permit and mitigation project were invalid.
When plaintiffs filed their complaint, the trial court signed an order to show cause that restrained defendants from entering plaintiffs' property, but denied plaintiffs' application to restrain continued construction of the wetlands mitigation project on the 206 Associates property. Plaintiffs' application for a preliminary injunction was not heard until more than three months later, on July 14, 2004. By then, construction of the wetlands mitigation project had been completed.
On the return date, the trial court continued the restraint barring R & L from entering plaintiffs' property, but denied plaintiffs' application for preliminary injunctive relief in all other respects. The court stated that plaintiffs had not presented evidence that the wetlands mitigation project had caused or would cause damage to their property "for which pecuniary damages are insufficient," and in any event, plaintiffs' application to enjoin "continuation of the wetlands project appear[ed] to be moot" because the project had been completed.
On that same date, the trial court also heard the DEP's motion to dismiss plaintiffs' complaint because it challenged final decisions of a state administrative agency over which the Appellate Division has exclusive jurisdiction. The trial court initially indicated that it would transfer the counts of plaintiffs' complaint that challenged the DEP's grant of the wetlands permit and mitigation project approval to this court and the remaining counts to the Law Division. However, the trial court subsequently determined that the entire case should be transferred to this court.
On appeal, plaintiffs argue that the trial court erred in denying their application to enjoin continued construction of the wetlands mitigation project and in transferring *730 jurisdiction over their tort claims against the private defendants to this court. Plaintiffs also argue that the DEP's approval of R & L's mitigation project must be reversed because R & L failed to provide plaintiffs with notice of their application, as required by the FWPA and the United States and New Jersey Constitutions.
We conclude that the trial court did not abuse its discretion in denying plaintiffs' application for a preliminary injunction, but that plaintiffs are entitled to pursue their claims for permanent injunctive relief at the conclusion of the case. We also conclude that although the trial court properly transferred plaintiffs' challenge to the freshwater wetlands permit and mitigation project approvals to this court, it erred in transferring plaintiffs' tort claims against the private defendants. We further conclude that the DEP's approval of R & L's mitigation project is invalid because R & L failed to give plaintiffs the notice of the application required by the FWPA.[1]

I
In determining whether to grant a preliminary injunction, a trial court must consider (1) whether an injunction is "necessary to prevent irreparable harm"; (2) whether "the legal right underlying [the applicant's] claim is unsettled"; (3) whether the applicant has made "a preliminary showing of a reasonable probability of ultimate success on the merits"; and (4) "the relative hardship to the parties in granting or denying [injunctive] relief." Crowe v. De Gioia, 90 N.J. 126, 132-34, 447 A.2d 173 (1982). An appellate court applies an abuse of discretion standard in reviewing a trial court's decision to grant or deny a preliminary injunction. See Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137, 638 A.2d 1260 (1994); Nat'l Starch & Chem. Corp. v. Parker Chem. Corp., 219 N.J.Super. 158, 162, 530 A.2d 31 (App.Div. 1987).
The record before the court on plaintiffs' application for a preliminary injunction included plaintiffs' and defendants' expert reports that contained conflicting opinions as to whether R & L's mitigation project would cause damage to plaintiffs' farm. It also included a memorandum by the DEP official responsible for supervising the project that concluded the project would not cause such harm. In light of these conflicting proofs, it was within the province of the trial court to conclude that plaintiffs failed to establish "a reasonable probability of ultimate success on the merits" of their claim for equitable relief. Crowe v. De Gioia, supra, 90 N.J. at 133, 447 A.2d 173.
More importantly, by the time the trial court ruled on plaintiffs' application, R & L had already completed construction of the wetlands mitigation project. Consequently, plaintiffs' application for an injunction prohibiting the continuation of the project had become moot. At that point, the only relief the court could have granted was a mandatory injunction requiring restoration of the site to its original condition or ameliorative work that would mitigate the damage to plaintiffs' property allegedly caused by R & L's project. However, a party who seeks mandatory preliminary injunctive relief must satisfy a "particularly heavy" burden. Punnett v. Carter, 621 F.2d 578, 582 (3d Cir.1980). The expansive preliminary injunctive relief plaintiffs sought would have *731 required R & L to expend a substantial amounts of money to perform remedial work that would be unnecessary if R & L prevails in the litigation or even if plaintiffs prevail on liability but are unable to show an entitlement to permanent injunctive relief. Therefore, the trial court did not abuse its discretion in denying plaintiffs' application for a mandatory preliminary injunction.
However, the court erred in deciding solely on the record presented on the application for a preliminary injunction that there was no basis for the Chancery Division retaining jurisdiction over the case because plaintiffs had not presented any evidence of "injuries for which pecuniary damages are insufficient."
A trial court's determination whether to grant or deny an application for a preliminary injunction involves a different analysis than whether to grant a permanent injunction at the conclusion of the case. In considering an application for a preliminary injunction, the court must determine whether the applicant has made "a preliminary showing of a reasonable probability of ultimate success on the merits." Crowe v. De Gioia, supra, 90 N.J. at 133, 447 A.2d 173. In most cases, this involves a prediction of the probable outcome of the case based solely on documentary proofs, including affidavits containing conflicting factual allegations. Id. at 133-34, 447 A.2d 173. If there is a dispute as to whether the harm the applicant alleges can be adequately addressed by monetary damages, the court must determine not only the likelihood that the applicant will establish the other party's liability but also the need for injunctive relief to redress the harm. Id. at 132-33, 447 A.2d 173.
In contrast, the determination whether to grant a permanent injunction at the conclusion of the case does not involve a prediction as to the outcome of future proceedings. Instead, at that stage of the case, the court must make findings of fact based on the evidence presented at trial and then determine whether the applicant has established the liability of the other party, the need for injunctive relief, and the appropriateness of such relief on a balancing of equities. See Verna v. The Links at Valleybrook Neighborhood Ass'n, 371 N.J.Super. 77, 89, 852 A.2d 202 (App. Div.2004); Sheppard v. Twp. of Frankford, 261 N.J.Super. 5, 9-11, 617 A.2d 666 (App. Div.1992); Restatement (Second) of Torts § 936 (1979). In some cases, a trial court may be able to determine in ruling on an application for a preliminary injunction that the applicant would not be entitled to equitable relief even if he or she were to establish the other party's liability. However, if the applicant's ultimate entitlement to injunctive relief turns on contested issues of fact, this determination can only be made after the development of a complete record at trial.
In this case, the plaintiffs have asserted the type of claims that could warrant some form of injunctive relief. If a property owner's construction of improvements unreasonably causes flooding or other damage to a neighboring property, a court may grant mandatory injunctive relief to abate or ameliorate the effects of that damage. See Bd. of Educ. of Borough of Manasquan v. State, Dep't of Transp., 69 N.J. 92, 351 A.2d 17 (1976); Armstrong v. Francis Corp., 20 N.J. 320, 120 A.2d 4 (1956); Sheppard v. Twp. of Frankford, supra, 261 N.J.Super. at 9-11, 617 A.2d 666. In its April 14, 2004 report, plaintiffs' expert, Connolly Environmental, Inc. (CEI), concluded:
It is CEI's opinion that there will be an adverse impact to surface and groundwater resources that are necessary to sustain crops of the Rinaldo Farm.... *732 CEI's conclusion from review of the data is that groundwater discharge along the cut surrounding the wetland mitigation basins will be the primary source of water to the Mitigation Site. The long term effect of this discharge will be loss of necessary groundwater resources currently required for the Rinaldo Farm.
If the trial court credits this opinion regarding the impact of R & L's mitigation project on the operation of plaintiffs' farm, this could provide a sufficient factual foundation for a mandatory injunction to prevent or ameliorate such harm.
In determining whether to grant such relief, the court would of course have to consider the fact that R & L has completed construction of the wetlands mitigation project. See Brundage v. N.J. Zinc Co., 48 N.J. 450, 463-65, 226 A.2d 585 (1967). The court may conclude that it is not feasible to restore the mitigation site to its original condition, or even if feasible, that such relief would not properly balance the relative equities in the parties' positions. However, there may be injunctive relief short of restoration of the site to its original condition that would ameliorate the alleged adverse effect of the mitigation project upon plaintiffs' farm operations. If such an injunction would not provide plaintiffs complete relief for the past or anticipated future damage to their property, the court could also award money damages. Therefore, the trial court erred in summarily rejecting plaintiffs' claim for permanent injunctive relief based on the evidence presented in connection with their application for a preliminary injunction.

II
Under Rule 2:2-3(a)(2), the Appellate Division has exclusive jurisdiction to review any decision of a state administrative agency except one involving condemnation or inverse condemnation. See Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, 187 N.J. 212, 222-27, 901 A.2d 312 (2006). The DEP's grant of a wetlands permit for R & L's construction of an access road through wetlands and its approval of R & L's mitigation project were both final decisions of a state administrative agency. Therefore, the trial court correctly concluded that the Appellate Division has exclusive jurisdiction to review those decisions and that the part of plaintiffs' complaint challenging those decisions should be transferred to this court.[2]See Mutschler v. N.J. Dep't of Envtl. Prot., 337 N.J.Super. 1, 9-10, 766 A.2d 285 (App.Div.), certif. denied, 168 N.J. 292, 773 A.2d 1156 (2001).
However, the court erred in concluding that the counts of plaintiffs' complaint asserting tort claims against private defendants also should be transferred to this court. These counts assert causes of action for trespass, intentional interference with property rights, nuisance, conversion of water supply and negligence, and seek both injunctive relief and damages. Consequently, these counts fall squarely within the jurisdiction of the Chancery Division. R. 4:3-1(a)(1); see Boardwalk Props., Inc. v. BPHC Acquisition, Inc., 253 N.J.Super. 515, 526, 602 A.2d 733 (App.Div.1991).
Plaintiffs could have filed a notice of appeal to this court from the DEP's wetlands *733 permit and mitigation project approvals and filed a separate action in the Chancery Division asserting their tort claims against the private defendants. The fact that plaintiffs elected to challenge state administrative agency decisions and assert tort claims against private parties in a single complaint does not vest this court with jurisdiction over claims that the Court Rules allocate to the jurisdiction of the Chancery or Law Division. See Maisonet v. N.J. Dep't of Human Servs., 140 N.J. 214, 226-28, 657 A.2d 1209 (1995).
Plaintiffs' tort claims not only seek relief against private parties but also require the development of a full record and judicial fact-finding to decide. Consequently, they are the type of claims that would have to be heard in a trial court even if they were asserted against a state agency. See Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, supra, 187 N.J. at 225-26, 901 A.2d 312; D.J. Miller & Assocs., Inc. v. State, Dept. of Treasury, supra, 356 N.J.Super. at 191-93, 811 A.2d 952; Orleans Builders & Developers v. Byrne, 186 N.J.Super. 432, 446, 453 A.2d 200 (App. Div.), certif. denied, 91 N.J. 528, 453 A.2d 851 (1982); Pfleger v. State Highway Dep't, 104 N.J.Super. 289, 291-93, 250 A.2d 16 (App.Div.1968).
We also note that even if plaintiffs were unsuccessful in their challenge to the DEP wetlands permit and mitigation approval decisions, this would not foreclose them from pursuing their tort claims against the private defendants. The issuance of a government permit authorizing the disturbance of wetlands does not insulate the permittee from liability for "caus[ing] damaging flooding to its neighbors' properties." In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 472, 888 A.2d 441 (2006).
This case is distinguishable from Pascucci v. Vagott, 71 N.J. 40, 51-54, 362 A.2d 566 (1976), in which the Court held that the Appellate Division should exercise original jurisdiction over a claim against a municipal welfare director, which by statute was conferred upon the former Juvenile Domestic Relations Court, because the claim was closely related to a challenge to the validity of regulation of the State Division of Public Welfare, which the Appellate Division had exclusive jurisdiction to decide. Both the claim against the municipal welfare director and the challenge to the administrative regulation involved in Pascucci were appeals from administrative agency actions, which fall under the Supreme Court's constitutional authority to determine the "terms" and "manner" in which actions in lieu of prerogative writs should be heard. N.J. Const. art. VI, § 5, ¶ 4. In contrast, this case involves a challenge to administrative agency action and tort claims against private parties that were joined in the same complaint. Furthermore, plaintiffs' claims against the private parties are based on factual allegations and legal theories that are not dependent upon their challenge to the DEP's grant of a wetlands permit and mitigation project approval. See In re Freshwater Wetlands Statewide Gen. Permits, supra, 185 N.J. at 472, 888 A.2d 441. Therefore, it is appropriate for plaintiffs' tort claims against the private parties to be heard in the Chancery Division even though this court has exclusive jurisdiction to review the DEP's final decisions.

III
Plaintiffs argue that the wetlands permit and mitigation project approvals granted by the DEP are invalid because R & L failed to give them the notice required by the FWPA. The relevant section of the FWPA requires "[a] person proposing to engage in a regulated activity" to give "notice" to "landowners within 200 feet of *734 the site of the proposed regulated activity, ... describing the proposed regulated activity and advising these parties of their opportunity to submit comments thereon to the [DEP]." N.J.S.A. 13:9B-9(a)(2). When the DEP receives comments and supporting evidentiary materials objecting to an activity regulated by the FWPA, it is required to make findings of fact and conclusions of law regarding those comments. See In re Freshwater Wetlands Gen. Permits, 372 N.J.Super. 578, 594-96, 860 A.2d 450 (App.Div.2004); see also In re Freshwater Wetlands Statewide Gen. Permits, supra, 185 N.J. at 471-74, 888 A.2d 441; In re Issuance of Permit to Ciba-Geigy Corp., 120 N.J. 164, 172-73, 576 A.2d 784 (1990). Such fact finding serves "the salutary purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations." Id. at 172, 576 A.2d 784 (quoting In re Application of Howard Savings Inst., 32 N.J. 29, 52, 159 A.2d 113 (1960)).
R & L was not required to give plaintiffs notice of its application for a wetlands permit to fill wetlands in constructing the access road in Burlington Township because plaintiffs' farm is not located within 200 feet of that site. However, plaintiffs' farm is located within 200 feet of the Springfield Township site on which R & L constructed its off-site wetlands mitigation project. Therefore, if that project constituted a "regulated activity," plaintiffs were entitled to notice of R & L's application.
The FWPA defines "regulated activity" to mean any of the following activities in freshwater wetlands:
(1) The removal, excavation, disturbance or dredging of soil, sand, gravel, or aggregate material of any kind;
(2) The drainage or disturbance of the water level or water table;
(3) The dumping, discharging or filling with any materials;
(4) The driving of pilings;
(5) The placing of obstructions;
(6) The destruction of plant life which would alter the character of a freshwater wetland, including the cutting of trees;
[N.J.S.A. 13:9B-3.]
R & L's application for approval of its wetlands mitigation project clearly indicated that the 206 Associates site was an existing freshwater wetlands site. The September 9, 2003 mitigation proposal prepared for R & L by Greenvest describes the site as containing "modified agricultural wetlands," "[f]orested wetlands" and "scrub-shrub emergent wetlands." Furthermore, R & L's mitigation proposal indicated that even though its ultimate goal was to enhance and expand these wetlands, its project necessarily would involve the "disturbance" of existing wetlands on the site. In fact, the Greenvest report states that "[t]he total area of disturbance associated with the access easement and construction of the proposed wetland mitigation project is approximately 12 acres." In a letter dated July 30, 2003, the DEP also commented on the possible adverse impact of R & L's mitigation proposal upon existing wetlands on the site:
The existing forested wetlands adjacent to and down slope from the proposed mitigation area may be vulnerable to hydrologic changes that might result from the lowering of the current surface grade in the mitigation area. Please demonstrate that the constructed wetland design will not adversely affect this adjacent wetland area.
*735 Therefore, we conclude that R & L's mitigation proposal constituted a "regulated activity" within the intent of N.J.S.A. 13:9B-3 and for this reason R & L was required under N.J.S.A. 13:9B-9(a)(2) to give notice to plaintiffs.
The DEP contends that its regulations implementing the FWPA do not require notice of an application for approval of a mitigation project to be given to owners of property within 200 feet of the site. However, N.J.A.C. 7:7A-2.1(a) requires "[any] person proposing to engage in a regulated activity, as described at N.J.A.C. 7:7A-2.2, [to] first obtain a general permit authorization or an Individual freshwater wetlands or open water fill permit[,]" which would require notice to be given to property owners within 200 feet of that regulated activity, N.J.S.A. 13:9B-9(a)(2), and N.J.A.C. 7:7A-2.2 defines "regulated activity" even more broadly than N.J.S.A. 13:9B-3. In any event, even if the DEP regulations could be read to exempt an applicant for approval of a wetlands mitigation project involving disturbance of existing wetlands from the requirement of giving notice to owners of property within 200 feet of the site, those regulations would be inconsistent with N.J.S.A. 13:9B-3 and N.J.S.A. 13:9B-9(a)(2) and therefore invalid. See In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489-90, 852 A.2d 1083 (2004).
The DEP also argues that plaintiffs were afforded an adequate opportunity to comment upon R & L's mitigation proposal through their submissions to the trial court and that the DEP's responses to those submissions indicate R & L's objections would not have changed the DEP's decision. However, a submission to a court in the course of litigation challenging a final agency decision is not a substitute for the opportunity afforded by N.J.S.A. 13:9B-9(a)(2) to comment upon a proposed regulated activity before the activity is authorized.
Furthermore, the comments attached to the certification of Virginia Kop'Kash, the Supervisor of the DEP Wetlands Mitigation Unit, do not reflect a thorough and fair consideration of plaintiff's expert report. Kop'Kash's memorandum states in pertinent part:
On behalf of the Department, I completed a review of the report entitled "Preliminary Environmental Impact Assessment of the Wetland Mitigation Project for Block 1201 Lot 7, Springfield Township Burlington County New Jersey" prepared by Connolly Environmental, Inc.'s dated April 14, 2004. In brief, there was no information presented in the report that would cause the Department to change our approval of the wetland mitigation project located on Block 1201, Lot 7 in the Township of Springfield, Burlington County....
....
The Department has no information to conclude that the mitigation site will adversely affect surface and groundwater resources that are necessary to sustain crops on the Rinaldo Farm. During the review of the mitigation proposal the permittee submitted a copy of a letter from the USDA Natural Resource Conservation Service dated 12-9-03 which stated they reviewed the wetland mitigation proposal and found that the proposal is acceptable.
Even if this memorandum had been issued before the DEP's decision, the conclusionary statements set forth therein do not constitute the kind of detailed fact-finding, supported by the evidence, required to "inform[ ] . . . interested parties and any reviewing tribunal of the basis on which [the DEP's] final decision was reached[.]" In re Issuance of Permit to Ciba-Geigy Corp., supra, 120 N.J. at 172, 576 A.2d 784 *736 (quoting In re Application of Howard Savings Inst., supra, 32 N.J. at 52, 159 A.2d 113). Therefore, we reverse the DEP's final decision approving R & L's wetlands mitigation project and remand to the DEP for reconsideration of the application in conformity with this opinion.
Accordingly, we affirm the denial of plaintiffs' application for a preliminary injunction. We sever plaintiffs' tort claims against the private defendants and remand those claims to the Chancery Division. We reverse the DEP's approval of R & L's wetlands mitigation proposal and remand to the DEP for reconsideration of the application on notice to plaintiffs.
NOTES
[1] Because we conclude that plaintiffs were entitled to notice of R & L's wetlands mitigation proposal under the FWPA, we have no need to address their argument that such notice was required under the United States and New Jersey Constitutions.
[2] Although plaintiffs' complaint could be read not only to seek judicial review of the DEP's wetlands permit and mitigation approval decisions but also to assert claims against the DEP under 42 U.S.C.A. § 1983 and the Tort Claims Act, N.J.S.A. 59:1-1 to -12.3, which would be cognizable in the Law Division, see D.J. Miller & Assocs., Inc. v. State, Dep't of Treasury, 356 N.J.Super. 187, 191-93, 811 A.2d 952 (App.Div.2002), plaintiffs indicated at oral argument before the trial court that the only relief they seek against the DEP is the invalidation of the wetlands permit and mitigation project approvals.