**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1175-22

KEVIN WINE, on behalf of
himself and all others similarly
situated,

 Plaintiff-Appellant,

v.

SOCIETY HILL AT PISCATAWAY
CONDOMINIUM ASSOCIATION,
INC., and BOARD OF TRUSTEES
OF SOCIETY HILL AT
PISCATAWAY CONDOMINIUM
ASSOCIATION, INC.,

 Defendants-Respondents.

_____

Submitted March 5, 2024 – Decided March 22, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000123-22.

Kevin Wine, appellant pro se.

Kirmser, Lamastra, Cunningham & Skinner, attorneys for respondents (Timothy P. Malacrida, of counsel and on the brief).

PER CURIAM

Plaintiff Kevin Wine appeals from a December 1, 2022 order denying his request for injunctive relief and dismissing his complaint against defendants Society Hill at Piscataway Condominium Association, Inc. (Association), and the Board of Trustees of Society Hill at Piscataway Condominium Association, Inc. (Board).  We affirm.

Plaintiff owns a condominium unit in Society Hill at Piscataway.  The Association governs the condominium complex where plaintiff resides.  All 545 owners of units in the condominium complex are members of the Association (unit owners).  The Association is governed by the Board, which is comprised of seven elected individuals (Board members).

The genesis for plaintiff's claims against defendants stemmed from the Association contracting with a company to remediate contaminated soil in the common area of the condominium complex.  As part of its decision to remediate the contamination, the Board approved a special assessment to be paid by each unit owner to cover the cost of the remediation.  The special assessment initially

required each unit owner to pay $2,000. Plaintiff, a former Board member, objected to the special assessment.

Because he believed the special assessment was excessive, plaintiff circulated two petitions among the unit owners. Petition One sought a special election to remove the six Board members responsible for the remediation contract and special assessment fee. Petition Two demanded a special meeting to amend the Association's by-laws. In his proposed amendment to the by-laws, plaintiff sought to permit electronic voting at the Association's annual meeting and other election security measures.

Plaintiff sent the following announcement to all unit owners:

> At the June 27, 2022 Special Meeting, the [Board] approved a surprise $2,000 special assessment to all unit owners. As insane and out-of-touch as this might be, they have the authority to do it, and they are following through on their plans. If you don't pay by November, they will charge you 6% interest, make you delinquent (can't vote[]) and send you to collections. Watch out–they are allowed to charge collection attorney's fees back to your account[.]
>
> . . . .
>
> We urgently need 278 owners to sign and return the petitions on the reverse of this packet, to force the Board to call a Special Election. . . .
>
> . . . .

At the same time, this is an opportunity to finally force the Board to amend the Association's By-Laws to allow [unit owners] to vote electronically, and to create specific rules the Board must follow to make sure our elections are run honestly. The second petition orders the [B]oard to call a Special Meeting to vote on the attached proposed By-Law amendments.

Petition One stated:

As per section 5.26-8-11(d) of the Planned Real Estate Development Full Disclosure Act ("PREDFDA" for short), which provides an alternative method to "remove" trustees from the board, and which states:

Association members may initiate removal of a board member who was elected by the unit owners by submitting to the board a petition signed by [fifty-one] percent of association members for removal of that board member.

> 1. A special election of the association membership shall be held within [sixty] days of receipt of the petition.
>
> 2. When the annual meeting of the association membership is scheduled to occur within [sixty] days of the submission of the petition, then the election shall be held at the annual meeting.

I am petitioning the [Board] to call a Special Election of the Association, for the sole purpose of voting to remove [Board Members] . . . . I am also asking the Board to conduct the Special Election using the services of an outside, independent, unaffiliated third-party. (Note: All owners can sign this petition, even if currently not in good standing).

A-1175-22

Petition Two stated:

> As per section 3.04 of the By-Laws of the [Association], I am petitioning the [Board] to call a Special Meeting of the Members, for the sole purpose of voting to approve or reject the attached proposed amendment to the By-Laws, to provide the option to vote electronically and receive Association notices electronically and to implement procedures to ensure the integrity of all elections in Society Hill at Piscataway.

Following plaintiff's circulation of the petitions, the Board sent an August 29, 2022 letter to all unit owners, requesting candidates for nomination to the Board be submitted by September 19, and scheduling the Board's annual meeting for October 24, 2022. As of September 7, 2022, a total of 287 unit owners had signed Petition One and a total of 279 unit owners had signed Petition Two.[1] Copies of the signed petitions, a list of the unit owners signing the petitions, the proposed by-laws amendment, and plaintiff's cover letter were sent to the Association.

After September 8, 2022, the Board received an additional eight signatures from unit owners on Petition One and Petition Two. Thus, plaintiff contended

---

[1] Based on the total 545 unit owners in the Association, Petition One required 278 unit owner signatures to satisfy N.J.A.C. 5:26-8.11(d). Under the Association's by-laws, Petition Two required signatures from 182 unit owners to hold a special meeting.

295 unit owners signed Petition One and 287 unit owners signed Petition Two. According to plaintiff, the number of unit owners signing the petitions satisfied the requirements for the Association to consider both petitions.

Plaintiff sent a September 21, 2022 letter to the Board, demanding it act on both petitions. That same day, the Board canceled its regularly scheduled September 22, 2022 meeting. On September 22, 2022, the Board announced it would hold a special meeting on September 29.

On September 23, the Board announced "[a] group of appointed judges [would] be chosen to inspect the validity of [plaintiff's] petitions." During the September 29, 2022 special meeting, the Board voted unanimously to appoint five individual unit owners as petition inspectors.

According to plaintiff, at least three of the designated petition inspectors were hostile toward him and opposed to the relief sought in his petitions. At the same special meeting, the Board unanimously approved a motion to reduce the special assessment fee to $1,200.

On October 3, 2022, plaintiff sent a second demand letter to the Board, seeking action on his petitions. Because defendants failed to respond to his petitions, on October 13, 2022, plaintiff filed a complaint seeking declaratory and injunctive relief, and an order to show cause requesting temporary restraints.

6

In his complaint, plaintiff alleged Petition One received the required number of signatures under N.J.A.C. 5:26-8.11(d), and Petition Two received the required number of signatures under § 3.04 of the Association's by-laws. The judge denied plaintiff's request for temporary restraints but scheduled a hearing on plaintiff's order to show cause for December 1, 2022.

The day after plaintiff filed his complaint, the Board sent an email to all unit owners, providing an update on the Association's internal review of the signatures supporting Petition One. According to the email, Petition One received 288 signatures. However, forty-nine signatories had not paid the $1,200 special assessment. Further, nineteen additional signatures were disqualified as duplicates, withdrawals, or submitted by individuals who were no longer unit owners. Thus, the Board declined to consider the relief requested in Petition One because 278 signatures were required and only 220 signatures were determined to be valid.

In a November 10, 2022 letter, the Board also advised the proposed amendment to the by-laws in Petition Two contained vague and ambiguous language contrary to PREDFDA. The lack of clarity in the proposed amendment precluded the Board from acting on Petition Two. The Board suggested plaintiff

modify the language of his proposed amendment to the by-laws in order for the Board to consider Petition Two.

After being served with plaintiff's complaint and order to show cause, defendants filed opposition to the order to show cause. Additionally, defendants filed a motion to dismiss the complaint under Rule 4:6-2(e).

On December 1, 2022, the return date of plaintiff's order to show cause, the judge heard the parties' arguments. Defense counsel explained the bases for the Board's disqualification of certain votes submitted on Petition One. After removing the disqualified votes, plaintiff lacked the number of signatures required under the regulations governing condominium associations to require the Board to act on Petition One.

In addressing Petition Two, defense counsel agreed plaintiff had more than one-third the required number of signatures. However, defense counsel explained: "[T]he issue is the substance of that petition and its ambiguity. Its terms are not understandable in some areas. They are also inconsistent with the [b]y-[l]aws . . . ." Counsel then enumerated certain alleged ambiguities and inconsistencies in the language of the proposed amendment.

Defense counsel further told the judge the Association requested plaintiff "fix [the language]" and "come back to [the Board] with the appropriate

support."  Additionally, counsel argued it would be improper for the Association to change the proposed amendment language and then request unit owners vote because "the [B]oard can't unilaterally" act.  Defense counsel also advised the judge the Board would be placed in "an untenable position" if it corrected the language for the proposed amendment to the by-laws, "and that's why it was sent back to [plaintiff] to correct and modify and get the appropriate support for it."

After hearing the parties' legal arguments, the judge rendered an oral decision.  Based on her findings, the judge denied plaintiff's request for injunctive relief and granted defendants' motion to dismiss "with respect to both petitions" pursuant to Rule 4:6-2(e).

In rendering her decision to dismiss plaintiff's complaint, the judge considered the regulations governing condominium community members' voting rights under N.J.A.C. 5:26-8 and N.J.A.C. 5:26-8.8 and § 3.04 of the Association's by-laws.

Regarding Petition One, the judge found "there [was] evidence supplied . . . by defendant[s,] making it clear that [forty-nine] of [Petition One's] signatures . . . were from . . . members whose accounts were delinquent at the time of the petition, [and] pursuant to the express terms of the by-laws . . . those members would be prohibited from voting or submitting a petition until those

accounts [were] current." Thus, the judge concluded Petition One failed to meet the voting threshold because Petition One did not receive the required 278 valid unit owner signatures.

Regarding Petition Two, the judge noted that if the amendment was modified, there would be a need to "start again at the very beginning" and "recirculate [the] petition" which would force plaintiff to begin "at the starting line." The judge explained: "I don't know legally that I . . . or the [A]ssociation would have the ability to just carry over those original signatories to the . . . amended document[.] . . . [A]lthough [the theme] may be the same[,] . . . its language is going to change and then those people have a right to [agree] or [disagree]" with the modified language.

Additionally, the judge determined the language in the proposed amendment to the by-laws lacked the required clarity and specificity under N.J.A.C. 5:26-8.13(f)(2). Highlighting the deficiencies noted by defense counsel, the judge found the language in the proposed amendment "in its present version [was] unworkable."

On appeal, plaintiff contends the judge erred in dismissing his complaint because Petition One had enough votes to meet the regulatory requirement applicable to condominium associations, notwithstanding the fact that some unit

owners were not in "good standing" due to nonpayment or late payment of condominium fees. He also argues that a unit owner's vote could not be discounted if subsequently withdrawn by the unit owner. Plaintiff further contends the Association had the authority to unilaterally correct the language in his proposed amendment to the Association's by-laws, and the judge erred in finding the Association could not do so. We reject these arguments.

I.

We recite the well-settled case law governing our review of motions to dismiss. "Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a motion under Rule 4:6-2(e), "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin, 246 N.J. at 171 (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). However, we

11

review a trial court's interpretation of laws, statutes, or rules de novo. Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019).

Plaintiff first argues the judge erred in granting defendants' motion to dismiss. We disagree.

Under Rule 4:6-2(e), a complaint will be dismissed if it fails to state a claim upon which relief can be granted. The standard governing the analysis of a motion to dismiss pursuant to Rule 4:6-2(e) requires the complaint be examined "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

In evaluating a motion to dismiss, the court is not concerned with the plaintiff's ability to prove the allegations; rather, "a complaint is entitled to liberal reading in determining its adequacy" and must merely "allege sufficient facts as give rise to a cause of action[.]" Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-2 (2024); see also Printing Mart, 116 N.J. at 746. "[P]laintiffs are entitled to every reasonable inference of fact," and examination of the complaint "should be one that is at once painstaking and undertaken with

a generous and hospitable approach." Id. at 746. While "the motion should be granted if even a generous reading of the allegations does not reveal a legal basis for recovery," Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003), courts should grant a motion to dismiss with caution and in "the rarest [of] instances." Ballinger v. Del. River Port. Auth., 311 N.J. Super. 317, 322 (App. Div. 1998) (quoting Printing Mart, 116 N.J. at 772).

Here, we are satisfied defendants met their burden on the motion to dismiss because plaintiff was unable to sustain his claims against defendants related to Petition One and Petition Two.

Plaintiff contends the judge erred in finding Petition One lacked the requisite number of unit owner signatures. We reject this argument.

"The object of statutory interpretation is to effectuate the intent of the Legislature, as evidenced by the plain language of the statute, its legislative history and underlying policy, and concepts of reasonableness." State v. Courtney, 243 N.J. 77, 85 (2020). We examine "the words of the statute and ascribe[] to them their ordinary meaning," reading "disputed language 'in context with related provisions so as to give sense to the legislation as a whole.'" Ryan v. Renny, 203 N.J. 37, 54 (2010) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the statute is clear on its face, the analysis is complete,

and it must be enforced according to its terms." Pfannenstein v. Surrey, 475 N.J. Super. 83, 95 (App. Div. 2023). "If, however, a literal interpretation of a provision would lead to an absurd result or would be inconsistent with the statute's overall purpose, 'that interpretation should be rejected' and 'the spirit of the law should control.'" Ibid. (quoting Hubbard v. Reed, 168 N.J. 387, 392-93 (2001)).

N.J.A.C. 5:26-8.8(a) defines association membership as follows:

> (a) Upon acceptance of a deed to the unit, each owner shall be an association member for so long as he or she holds title to the unit.

Under N.J.A.C. 5:26-8.8(c), an association member is deemed to be in good standing:

> (c) . . . with respect to eligibility to vote in executive board elections, vote to amend bylaws, and nominate or be a candidate for a position on the executive board when the association member:
>
> > 1. Is current in the payment of common expenses, late fees, interest on unpaid assessments, legal fees, or other charges lawfully assessed;
> >
> > 2. Is in compliance with a judg[]ment for common expenses, late fees, interest on unpaid assessments, legal fees, or other charges lawfully assessed;

3. Is in full compliance with a settlement agreement with respect to the payments of assessments, legal fees, or other charges lawfully assessed; or

4. Has requested or is participating in Alternative Dispute Resolution (ADR) or in a court proceeding for a dispute over a matter that affects the owner's good standing.

Additionally, § 3.08 of the Association's by-laws states:

A Member shall be deemed to be in "good standing" and "entitled to vote" at any annual or special meeting of the Association if, and only if, he has fully paid all assessments or fines made or levied against him and his unit by the [Board] as hereinafter provided, together with all interest, costs, attorney's fees, penalties and other expenses, if any, properly chargeable to him and against his unit, at least three calendar days prior to the date fixed for such annual or special meeting.

Simply stated, under the regulations governing condominium associations and the Association's by-laws, to be considered a member in good standing a unit owner must be current in the payment of all lawful charges assessed by the condominium. The regulation states a member must be in good standing to vote in board elections, amend by-laws, and nominate candidates for a board election. The Association's by-laws explicitly provide a member must be in good standing to be "entitled to vote."

15

Plaintiff's argument that a unit owner who is delinquent in the payment of all condominium fees may petition to initiate removal of Board members lacks legal support. If a unit owner is required to be in good standing to vote regarding a Board vacancy, logically a unit owner must be in good standing to vote to remove a Board member.

Further, there is a distinction between a unit owner's delinquency in the payment of special assessment fees and a delinquency in the payment of condominium fees. The Board determined a unit owner is delinquent if the unit owner failed to pay condominium fees. The special assessment fee imposed by the Board required each unit owner to tender payment by the end of October 2022. Thus, it is likely that many unit owners were not yet required to pay the special assessment fee when plaintiff filed his complaint on October 13, 2022, and, therefore, would neither be delinquent in that payment nor disqualified from voting based on such delinquency. However, even without considering unit owners who had not yet paid the special assessment fee, there were multiple unit owners who signed the petitions but failed to pay their condominium fees. Thus, the judge found the Board properly concluded the unit owners who were delinquent in the payment of condominium fees would not be counted as part of the total signatures required for the Board to consider Petition One.

16

Nothing in the Association's by-laws or the regulations governing condominium associations preclude a unit owner from withdrawing their petition vote at any time. Plaintiff's reliance on <u>Mocco v. Picone</u>, 203 N.J. Super. 443 (App. Div. 1985) is misplaced because that case dealt with a recall petition for township commissioners in a Walsh Act community. 203 N.J. Super at 445. In <u>Mocco</u>, we held the withdrawal of signatures on recall petitions was limited by statute to the period prior to the filing of recall petitions. <u>Id.</u> at 447-48. In this case, we are dealing with a condominium association and there is no applicable statutory recall provision.

For these reasons, we are satisfied the judge properly found plaintiff did not attain the required number of unit owner signatures to meet the number of votes necessary for the Board to consider Petition One.

Plaintiff also contends the judge erred in finding his proposed amendment to the Association's by-laws was vague and ambiguous. We note plaintiff received the required number of unit owner votes to have the Board consider the issue raised in Petition Two. However, despite receiving the required number of unit owner votes, Petition Two's fatal defect stemmed from the imprecise and unclear wording of the language in plaintiff's proposed amendment.

A-1175-22

It is well established that a condominium association's authority "is found in the statute governing such associations, and the association's by-laws." Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426 (App. Div. 1994). To amend an association's by-laws, the governing regulation requires "[t]he amendment . . . be drafted in clear language and in a manner that is consistent with the association's bylaws and applicable laws." N.J.A.C. 5:26-8.13(f)(2).

Here, the deficiencies in the language proposed by plaintiff for amending the Association's by-laws were substantive. A plain reading of the amendment's proposed language highlights the various vague, undefined, and ambiguous terms. Additionally, plaintiff's proposed amendment was inconsistent with the Association's existing by-laws.

For example, plaintiff's proposed amendment required "postal carriers to deposit any mail addressed to [the Association's offices] directly in the election mailbox." However, plaintiff never stated postal carriers would be legally allowed to do so. Further, the proposed amendment stated the Board "may utilize a neutral third party for the collection of member ballots and proxy forms"; however, nowhere did the proposed amendment explain the method to select that third party. Nor were various terms, including the term "election mailbox," defined with the required clarity or specificity.

18

Here, the judge found it would be improper and pose a potential conflict if the Board unilaterally modified and revised the language in plaintiff's proposed amendment to the Association's by-laws. The judge correctly concluded it would be improper for the trial court to "cherry pick" from the proposed amendment's language "to make it workable" in order to comply with the regulations governing condominium associations.

The judge acknowledged plaintiff's concerns about costs and timing associated with "recirculating" the proposed amendment to the Association's by-laws. However, we agree with the judge's conclusion that she lacked the authority to "carry over th[e] original signatories" in considering any revised version of the proposed amendment to the by-laws. The judge aptly determined any revised language for the proposed amendment to the Association's by-laws required plaintiff to start the process anew despite the lost time and increased expense. We also agree the judge could not compel defendants to revise or modify plaintiff's proposed amendment because it would be an improper for the Board to act unilaterally after the unit owners submitted votes on the original version of Petition Two. More importantly, we agree with the judge's determination that plaintiff's ambiguous and vague language in the proposed

amendment to the Association's by-laws failed to comport with the requirements of N.J.A.C. 5:26-8.13(f)(2).

## II.

We next consider plaintiff's argument the judge erred in denying his requested injunctive relief.  We reject this argument.

A trial judge has discretion whether to grant a preliminary injunction, and a judge's decision will only be overturned for an abuse of that discretion. Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994); Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395 (App. Div. 2006).  "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."  Savage v. Twp. of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022) (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018)).

Injunctive relief is an extraordinary equitable remedy that should be entered by a trial court after exercising great care and only if the movant demonstrates, by clear and convincing evidence, entitlement to the requested relief.  Dolan v. DeCapua, 16 N.J. 599, 614 (1954).  The seminal case for granting preliminary injunctive relief is Crowe v. De Gioia, 90 N.J. 126 (1982). Under Crowe, the party seeking injunctive relief bears the burden of

demonstrating:  (1) irreparable harm is likely if the relief is denied; (2) the applicable underlying law is well settled; (3) the material facts are undisputed and there exists a reasonable probability of ultimate success on the merits of the claim; and (4) the balance of the hardship to the parties favors the issuance of the requested relief.  Id. at 132-34.

"[A] preliminary injunction should not be entered except when necessary to prevent substantial, immediate and irreparable harm."  Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 638 (App. Div. 1997).  "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages," which "may be inadequate [due to] the nature of the injury or of the right affected."  Crowe, 90 N.J. at 132-33.  Moreover, to prevail on an application for temporary relief, the movant "must make a preliminary showing of a reasonable probability of ultimate success on the merits," although "mere doubt as to the validity of the claim is not an adequate basis for refusing to maintain the status quo."  Id. at 133.

Plaintiff failed to show a likelihood of success on the merits with respect to Petition One.  The judge concluded the Board properly found unit owners who were delinquent in the payment of condominium fees could not be counted

21

as valid votes for satisfying the required number of votes for the Board's consideration of Petition One.

We are satisfied unit owners who had outstanding condominium fees were ineligible to cast a vote in favor of Petition One. Additionally, nothing in the regulation or case law precluded unit owners from withdrawing their vote at any time. After discarding votes from delinquent unit owners and unit owners who elected to withdraw their vote on Petition One, plaintiff lacked the required number of votes for the Board to consider his petition. Without the required number of valid unit owner votes, plaintiff failed to present a reasonable probability of ultimate success on the merits with respect to the requested relief in Petition One. Nor did plaintiff demonstrate the balancing of the hardships to the parties favored injunctive relief.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1175-22